IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
June 2, 2004 Session

## STATE OF TENNESSEE v. ROBERT PAGE

**Direct Appeal from the Criminal Court for Shelby County**
**No. 99-09509     W. Fred Axley, Judge**

---

**No. W2003-01342-CCA-R3-CD  - Filed August 26, 2004**

---

The Defendant, Robert Page, was convicted by a jury of the second degree murder of Roosevelt Burgess.  The Defendant was subsequently sentenced as a Range II offender to thirty-eight years in the Department of Correction.  In this direct appeal, the Defendant raises the following issues:  1) whether the evidence is sufficient to support the verdict; 2) whether the trial court improperly limited the impeachment of State witness Carrie Jones; 3) whether the trial court properly admitted a photograph of the victim; 4) whether the trial court committed error in providing supplemental jury instructions; 5) whether comments by the trial court compromised the Defendant's right to a fair trial; and 6) whether the trial court erred in failing to instruct the jury on the lesser-included offense of facilitation to commit second degree murder.  Because the trial court committed reversible error in omitting a jury instruction on facilitation of second degree murder, we reverse the Defendant's conviction and remand this matter for a new trial.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Reversed; Remanded**

DAVID H. WELLES, J., delivered the opinion of the court, in which ROBERT W. WEDEMEYER, J., joined.  DAVID G. HAYES, J., filed an opinion concurring in part and dissenting in part.

Larry Copeland and Paul Guibao, Memphis, Tennessee, for the appellant, Robert Page.

Paul G. Summers, Attorney General and Reporter; David H. Findley, Assistant Attorney General; William L. Gibbons, District Attorney General; and Reginald Henderson, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

Carrie Jones testified that, on the night of April 30, 1999, her daughter woke her up and told her that four men were "whooping" someone outside.  Ms. Jones went outside and observed four men beating up a fifth man.  Ms. Jones recognized the Defendant as one of the four assailants.  She

approached the Defendant and asked him why they were beating the victim. Ms. Jones further told the Defendant to stop beating the man. Ms. Jones testified that the Defendant told her to mind her own business. At some point, he also told her that the man owed him money for crack cocaine.

The beating continued while Ms. Jones followed the pack of men. The victim broke free at one point and ran a short distance. The four men followed him, resuming their attack when they caught up with him. Ms. Jones stood a short distance away and watched. She stated that she saw the Defendant hit the victim with a "plank" several times. When the victim fell to the ground, the Defendant stopped hitting him. Ms. Jones saw the other men then kick the victim. Thereafter, all four men left the scene. Ms. Jones then went to where the victim lay on the ground. She stayed with him until the police arrived.

Ms. Jones testified that, in mid-May 1999, the Defendant called her and asked her to change the statement she had given to the police in which she identified the Defendant as one of the assailants. She explained that she and the Defendant had dated at one time, but that they remained friends. She denied ever having made any threats against the Defendant.

Irmon Jones, Ms. Jones' daughter, testified that as she was leaving the house that night, she saw four men coming around the corner arguing with another man. She recognized the four men as Lacy Woods, Michael Woods, Anthony Carr, and the Defendant. She saw these four men throwing beer bottles at the fifth man. The fifth man was trying to run but was unable to get away from his attackers. At some point, she heard the men saying, "y'all, let's whoop his ass." As she was standing on the porch, she saw the men begin hitting the victim with sticks or planks or something "kind of big." She stated that she "couldn't see who was hitting" the victim and could not tell who had the sticks in their hands. She did, however, observe all four men hitting the victim with some objects. She called the police.

Mr. Michael Miller testified that he has a grocery store in the area of the assault. The Defendant was in his store at about 10 o'clock that evening with Michael Woods. Ten to fifteen minutes later, Mr. Miller saw a fight with four men chasing another. He watched as the four men caught the fifth. The fifth man fell on the ground and was getting beaten with a stick or "something." Mr. Miller testified that the beating continued for eight to ten minutes after the fifth man fell, and that the four assailants were taking turns hitting the fallen man. Mr. Miller explained that his store was located about two and one-half blocks from the scene of the beating.

Officer Jason McDaniel was one of the first officers to arrive at the scene. He found the victim lying face-down, surrounded by numerous sticks and boards that were broken and bloody. Ms. Carrie Jones was there. David Tucker responded as a paramedic and determined that the victim was dead.

Officer Daniel Parris collected evidence at the scene, including an open box-cutter found near the body. He also collected the boards found near the body, which were exhibited to the jury at trial. Officer Parris did not attempt to collect any fingerprints.

Lieutenant Gary Creasy testified that the Defendant came into the police station voluntarily on May 2, 1999. Lt. Creasy took the Defendant's statement, in which the Defendant admitted to participating with Lacy Woods, Andy Carr and Michael Woods in beating up the victim. In describing his role in the beating, the Defendant stated,

> I came from the store at Fifth and Mill Streets. When I stopped at the stop sign, I seen Lacey[sic] and some other dude arguing about some money or something. I seen dude when he pulled a box cutter and tried to stab Lacey with it. Lacey was backing up, looking for something or anything to hit the dude with. Then, me, Michael and Andy got with Lacey and started chasing the dude with the box cutter. We ran to where the dude fell down. I don't know the name of the street. I picked up a sign and hit him with it in the back of the head. Then the sign slipped out of my hand and Andy Carr picked up the sign and hit him with it. Then, Michael Woods picked up the stick and hit the dude one time in the head. Then Michael threw it down. That's when Lacey picked up the stick and kept on hitting the dude. I don't know how many times Lacey hit him, I think about seven or eight times. Then I walked off.

The Defendant described the object with which he hit the victim as "a plastic white sign that [he] picked up off the ground. It looked like a thick piece of plastic." The Defendant stated that he did not hit the victim with anything else, and denied that he or anyone else had kicked the victim. The Defendant stated that he hit the victim because he "was drunk and wasn't thinking." He stated that the only reason he knew for the fight was something about some money between the victim and Lacy. The Defendant told the police that the victim did not owe him anything, and that he had sold the victim some cocaine in the past.

The Defendant described the victim's condition when he last saw him as "layin' on the ground and Lacey was still hitting him with the stick." He did not call the police because he "panicked." He requested that his "fingerprints [be] checked on the murder weapon on that piece of two by four."

Dr. Thomas Deering performed the autopsy on the victim. His report states that "[d]eath was due to numerous blows to the head with injury to the brain." The specific cause of death is designated as "[b]lunt trauma to the head." Dr. Deering identified sixteen specific blunt trauma wounds to the victim's head. Dr. Deering also opined that the boards collected from around the victim's body could have caused "any number of the wounds."

Lacy Frank Woods, Jr. testified on behalf of the Defendant. He had pled guilty to second degree murder in connection with the victim's death. He explained that his fight with the victim began because the victim owed him $5 for crack cocaine. As he and the victim were arguing, the victim pulled out a box cutter. At this point, the Defendant intervened and tried to break up the fight. The victim "pulled out" on the Defendant and the Defendant picked up a piece of plastic or something and hit the victim. The Defendant then left. Mr. Woods and the victim continued to

fight, and Mr. Woods picked up a two by four piece of wood and hit the victim with it.  Mr. Woods testified that he hit the victim with the board "repeatedly."  Mr. Woods stated, "I'm the one . . . did the damage that caused the death."  Mr. Woods explained that the victim was still standing when the Defendant left.  Mr. Woods also explained that he had drunk liquor all that day and smoked fifteen to twenty rocks of cocaine.

When cross-examined about discrepancies between his testimony and his statement to the police, Mr. Woods explained, "I might have lied in that statement, but I'm not lying now."

## SUFFICIENCY

The Defendant first contends that the evidence is not sufficient to support his conviction of second degree murder.  Tennessee Rule of Appellate Procedure 13(e) prescribes that "[f]indings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support the findings by the trier of fact of guilt beyond a reasonable doubt."  A convicted criminal defendant who challenges the sufficiency of the evidence on appeal bears the burden of demonstrating why the evidence is insufficient to support the verdict, because a verdict of guilt destroys the presumption of innocence and imposes a presumption of guilt.  See State v. Evans, 108 S.W.3d 231, 237 (Tenn. 2003); State v. Carruthers, 35 S.W.3d 516, 557-58 (Tenn. 2000); State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982).  This Court must reject a convicted criminal defendant's challenge to the sufficiency of the evidence if, after considering the evidence in a light most favorable to the prosecution, we determine that any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.  See Jackson v. Virginia, 443 U.S. 307, 319 (1979); State v. Hall, 8 S.W.3d 593, 599 (Tenn. 1999).

On appeal, the State is entitled to the strongest legitimate view of the evidence and all reasonable and legitimate inferences which may be drawn therefrom.  See Carruthers, 35 S.W.3d at 558; Hall, 8 S.W.3d at 599.  A guilty verdict by the trier of fact accredits the testimony of the State's witnesses and resolves all conflicts in the evidence in favor of the prosecution's theory.  See State v. Bland, 958 S.W.2d 651, 659 (Tenn. 1997).  Questions about the credibility of witnesses, the weight and value of the evidence, as well as all factual issues raised by the evidence are resolved by the trier of fact, and this Court will not re-weigh or re-evaluate the evidence.  See Evans, 108 S.W.3d at 236; Bland, 958 S.W.2d at 659.  Nor will this Court substitute its own inferences drawn from circumstantial evidence for those drawn by the trier of fact.  See Evans, 108 S.W.3d at 236-37; Carruthers, 35 S.W.3d at 557.

Second degree murder is defined as the "knowing killing of another."  Tenn. Code Ann. § 39-13-210(a)(1).  "A person acts knowingly with respect to a result of the person's conduct when the person is aware that the conduct is reasonably certain to cause the result."  Id. § 39-11-302(b).  The State's evidence established that the Defendant hit the victim in the head repeatedly with a "plank" while others were doing likewise.  Such conduct is reasonably certain to cause death.  The Defendant was certainly aware enough of his own actions to tell Ms. Jones to mind her own business, and then to describe his own conduct two days later to the police.  The proof is more than

sufficient to establish that the Defendant knowingly participated in killing the victim.[1] This issue is without merit.

## IMPEACHMENT OF CARRIE JONES

The Defendant next complains that the trial court improperly limited his ability to impeach State witness Carrie Jones, thereby violating his constitutional rights of confrontation. See U. S. Const. amend. VI; Tenn. Const. art. I, § 9. Specifically, the Defendant sought to call Latrice Hemphill to testify about an alleged threat she heard Carrie Jones make to the Defendant approximately one year prior to the killing, and to testify further about Ms. Jones' general reputation for truthfulness in the community. The State objected to any testimony about the alleged threat. The trial court ruled that the alleged threat was too remote in time and refused to allow that line of questioning. The State also objected to any testimony about Ms. Jones' reputation for veracity, and the trial court also upheld this objection.

The Defendant now argues that the trial court thereby erred. However, the Defendant never proffered the testimony of Ms. Hemphill. Therefore, we have no way of evaluating whether the trial court committed reversible error in refusing to allow her to testify about the points in question. "Error may not be predicated upon a ruling which . . . excludes evidence unless a substantial right of the party is affected, and . . . the substance of the evidence and the specific evidentiary basis supporting admission were made known to the court by offer or were apparent from the context." Tenn. R. Evid. 103(a)(2);. see also State v. Sims, 45 S.W.3d 1, 15 (Tenn. 2001) (defendant waived issue of trial court's exclusion of evidence because no offer of proof was made at trial). The Defendant is not entitled to relief on this issue.

The Defendant also complains that the trial court improperly limited his cross-examination of Ms. Jones. Defense counsel began to inquire of Ms. Jones about her testimony at the preliminary hearing in this matter. Ms. Jones stated that she "didn't go to no preliminary hearing," and stated that she did not recall giving any preliminary hearing testimony. Defense counsel tried to pursue the matter, and the State objected. Defense counsel then withdrew his question "until [he] lay[ed] the proper foundation." Later in his cross-examination, defense counsel asked Ms. Jones if a copy of her "prior testimony" would help her to remember having testified at the preliminary haring. The State again objected. A brief bench conference ensued, during which defense counsel requested a recess, which the trial court granted. Following this recess, defense counsel withdrew his question about Ms. Jones reviewing her prior testimony. Defense counsel did not further pursue this line of questioning during the cross-examination of Ms. Jones.

The trial court did not deny the Defendant his right to confront and cross-examine Ms. Jones. Defense counsel withdrew his questions in both instances prior to a ruling by the trial court on the

---

[1] It is immaterial that the Defendant may not have inflicted the fatal blow(s) himself. Under the theory of criminal responsibility for the conduct of another, on which the jury was instructed, the Defendant is criminally responsible for the murder of Roosevelt Burgess because, "[a]cting with intent to . . . assist the commission of the offense. . . [he] attempt[ed] to aid another person to commit the offense." Tenn. Code Ann. § 39-11-402(2).

State's objection. The Defendant has therefore waived this issue and is entitled to no relief on this ground.

## ADMISSIBILITY OF PHOTOGRAPHS

The Defendant complains about the trial court's admission of photographs of the victim. However, the only specific photograph referenced in the Defendant's brief is the one discussed at pages 22-23 of the transcript of evidence, which is Exhibit 3. Exhibit 3 is a photograph taken at the scene of the victim lying face down where he was left by his assailants. Several lacerations to the back of the victim's head are visible. A pool of blood under the victim's face is also visible, as are some blood spatters on the victim's right arm.

It is well-settled that the admissibility of photographs is a matter entrusted to the discretion of the trial court, and a trial judge's decision to admit a photograph into evidence will not be overturned on appeal absent a clear showing of an abuse of that discretion. See State v. Porterfield, 746 S.W.2d 441, 450 (Tenn. 1988); State v. Banks, 564 S.W.2d 947, 949 (Tenn. 1978).

We see no abuse of discretion in the trial court's admission of the challenged photograph. The photograph is relevant to demonstrate how the victim was killed and corroborates the witnesses' testimony about the victim being hit in the head with boards. While the photograph is certainly not "pretty," it is not particularly gruesome. The probative value of this photograph was not substantially outweighed by the danger of unfair prejudice, see Tenn. R. Evid. 403, and the trial court therefore committed no error in admitting it. This issue is without merit.

While the Defendant uses the plural term "photographs" in his brief, Exhibit 3 is the only one specifically identified. Any complaints by the Defendant with respect to any other photographs are waived for failure to make appropriate references to the record. See Tenn. Ct. Crim. App. R. 10(b).

## TRIAL COURT'S RESPONSE TO JUROR QUESTION

During its deliberations, the jury submitted the following question to the trial court: "Judge, [i]f we cannot get an[sic] unanimous decision guilty or not guilty on the first charge, can we proceed to the second or third charge?" In responding to this question, the trial court told the jury, "I will read to you the last page of these [jury] instructions. And remember my caution to you that any verdict you can reach is found on the last page of these instructions." The trial judge then proceeded to read aloud to the jury the final page of his written jury instructions, which required the jury to first inquire whether the Defendant is guilty of the indicted offense of second degree murder, followed by the instruction that "If you find the defendant not guilty of this offense, or if you have a reasonable doubt of his guilt of this offense, you will acquit him thereof and then proceed to inquire whether or not he is guilty of Voluntary Manslaughter as included in the indictment." This written instruction is repeated for the lesser-included offenses of voluntary manslaughter and reckless homicide. After reading the final page of the written jury instructions to the jury in its entirety, the trial judge stated, "Now, does that help? If you cannot reach a verdict as to the first charge, you go to the next charge. Is that helping?" The jury foreperson responded, "Yes, sir," and the trial judge concluded, "That's all I can tell you. And with that, I will staple your question to the jury

instructions and order you to resume deliberation." The Defendant made no objection to these statements by the court and made no request that they be submitted in any other form.

The Defendant now contends that the trial judge's final sentences to the jury following his recital of the written instructions were "outside prescribed limits for judicial comments that explanation[sic] of jury instructions" and that he was prejudiced thereby. Essentially, the Defendant argues that the trial judge committed reversible error by not reducing his final comments to writing.

We are not persuaded. First, the Defendant has waived this issue by failing to raise it at the time the trial court made the comments. See Tenn. R. App. P. 36(a). Second, although Tennessee Rule of Criminal Procedure 30(c) requires that, in felony trials, "every word of the judge's instructions shall be reduced to writing before being given to the jury," any error in this regard is cause for reversal only if it more probably than not affected the judgment. See Tenn. R. App. P. 36(b); State v. Gorman, 628 S.W.2d 739, 740 (Tenn. 1982); State v. Thomas J. Faulkner, No. E2000-00309-CCA-R3-CD, 2001 WL 378540, at *12 (Tenn. Crim. App., Knoxville, April 17, 2001). We must review the entire charge in order to determine whether any such error was prejudicial. See Gorman v. Earhart, 876 S.W.2d 832, 836 (Tenn. 1994).

The Defendant has failed to demonstrate how the verbal supplemental instruction caused him to suffer any prejudice. Moreover, our review of the entire jury charge does not convince us that the verbal instruction more probably than not affected the judgment to the Defendant's detriment. Accordingly, we hold this issue to be without merit.

## TRIAL COURT'S COMMENTS FOLLOWING OBJECTION

During defense counsel's redirect examination of Mr. Woods, the State objected on the grounds that counsel was leading the witness. The trial court recessed the jury and then reprimanded defense counsel, stating:

> The jury is not present. Statements of counsel, not questions, intended to lead a witness will not be tolerated. I warned you once about an hour and 15 minutes ago and now you've done it again. It's intentional. It's not an accident. And it reaches the point where the Court has got its back against the wall. I'm going to have to deal with it. I asked you first of all. Now I've ordered you not to lead the witness, and it has done absolutely no good. I don't know what to do. I know I'm not going to stop this trial. It's going to finish one day, God help us, it's going to end. And I'm not going to stop it over this, and I'm not going to retry this sucker because of a sixth amendment problem or something the Judge might have done. So I ain't going to do anything. But I can guarantee you this, you do it again, I'm going to deal with you summarily.

The Defendant now complains that the trial court's reprimand somehow prejudiced him at trial.

This issue is waived because it was not raised in the motion for new trial. See Tenn. R. App. P. 3(e). Moreover, we are mystified as to how the Defendant was prejudiced by these comments in light of the jury's absence at the time they were made. This issue is without merit.

## FAILURE TO CHARGE LESSER-INCLUDED OFFENSE

The Defendant asserts that his conviction must be reversed and this matter remanded for a new trial because the trial court failed to charge the jury with an instruction on the lesser-included offense of criminal responsibility for facilitation of a felony. See Tenn. Code Ann. § 39-11-403(a). The question of whether a given offense should be submitted to the jury as a lesser-included offense is a mixed question of law and fact. See State v. Rush, 50 S.W.3d 424, 427 (Tenn. 2001). Our standard of review for mixed questions of law and fact is de novo with no presumption of correctness. See id.

Both the United States and Tennessee Constitutions require that one accused of a crime be given fair and reasonable notice of the charges to be defended. See U. S. Const. amend. VI; Tenn. Const. art. I, § 9; Rush, 50 S.W.3d at 427. Concomitant with this right, a criminal defendant may be convicted only of a crime which is raised by the indictment or which is a lesser-included offense thereof. See Rush, 50 S.W.3d at 427; see also Hagner v. United States, 285 U.S. 427, 431, 52 S.Ct. 417, 419, 76 L.Ed. 861 (1932). In order to determine what is a lesser-included offense of any given indicted offense, we utilize the formula set forth by our supreme court in State v. Burns:

An offense is a lesser-included offense if:

> (a) all of its statutory elements are included within the statutory elements of the offense charged; or
>
> (b)  it fails to meet the definition in part (a) only in the respect that it contains a statutory element or elements establishing
>> (1) a different mental state indicating a lesser kind of culpability; and/or
>> (2) a less serious harm or risk of harm to the same person, property or public interest; or
>
> (c) it consists of
>> (1) facilitation of the offense charged or of an offense that otherwise meets the definition of lesser-included offense in part (a) or (b); or
>> (2) an attempt to commit the offense charged or an offense that otherwise meets the definition of lesser-included offense in part (a) or (b); or
>> (3) solicitation to commit the offense charged or an offense that otherwise meets the definition of lesser-included offense in part (a) or (b).

6 S.W.3d 453, 466-67 (Tenn. 1999).

The determination that an offense is a "lesser-included" one under this paradigm does not automatically entitle the defendant to an instruction, however. See id. at 468 ("[t]he mere existence of a lesser offense to a charged offense is not sufficient alone to warrant a charge on that offense.") Rather, the trial court must continue its inquiry with two more questions:

First, the trial court must determine whether any evidence exists that reasonable minds could accept as to the lesser-included offense. In making this determination, the trial court must view the evidence liberally in the light most favorable to the existence of the lesser-included offense without making any judgments on the credibility of such evidence. Second, the trial court must determine if the evidence, viewed in this light, is legally sufficient to support a conviction for the lesser-included offense.

Id. at 469. "If the trial court finds that the offense is lesser-included and the evidence would support a conviction for that offense, then it has a duty to instruct the jury regarding the lesser-included offense." Rush, 50 S.W.3d at 429.

We turn now to whether the trial court had a duty in this case to instruct the jury as to the offense of facilitation of second degree murder. The Defendant was charged in a joint indictment with second degree murder.[2] Facilitation of second degree murder is a lesser-included offense of second degree murder under part (c) of the Burns formula. See also Tenn. Code Ann. § 39-11-403 Sentencing Commission Comments (characterizing facilitation as "a lesser-included offense if the defendant's degree of complicity is insufficient to warrant conviction as a party."); State v. Ely, 48 S.W.3d 710, 720 (Tenn. 2001) (holding that facilitation of first degree murder is a lesser-included offense where defendant is charged with first degree felony murder as a principal in a joint indictment with another defendant). Therefore, we must now determine whether any evidence exists that reasonable minds could accept as to this lesser-included offense. In making this determination, we view the evidence liberally in the light most favorable to the existence of this lesser-included offense and without any judgments as to the credibility of the evidence. See Burns, 6 S.W.3d at 469; see also State v. Allen, 69 S.W.3d 181, 187-88 (Tenn. 2002) ("The trial court must provide an instruction on a lesser-included offense supported by the evidence even if such instruction is not consistent with the theory of the State or of the defense. The evidence, not the theories of the parties, controls whether an instruction is required.")

To conduct this analysis, we first review the elements of the offense of criminal responsibility for facilitation of a felony, which provides that "[a] person is criminally responsible for the

---

[2]Additionally, the trial court charged the jury as to the Defendant's criminal liability as a principal under the theory of criminal responsibility for the conduct of another. See Tenn. Code Ann. § 39-11-402(2).

facilitation of a felony if, knowing that another intends to commit a specific felony, but without the intent required for criminal responsibility under § 39-11-402(2),[3] the person knowingly furnishes substantial assistance in the commission of the felony." Tenn. Code Ann. § 39-11-403(a) (footnote added). In this case, the Defendant admitted in his statement to the police that he decided to assist his friend Lacy Woods in his fight with the victim. In so doing, the Defendant admitted to having hit the victim once in the head with a sign after the victim fell to the ground. He then watched as Lacy continued to hit the victim in the head numerous additional times. This evidence would allow reasonable minds to conclude that the Defendant became aware at some point that Lacy intended to beat the victim to death, and assisted insofar as hitting the victim, but that the Defendant did not himself intend to promote or assist in the actual killing.

Having determined that evidence exists that reasonable minds could accept as to facilitation of second degree murder, we must now determine if this evidence, viewed in the same light, is legally sufficient to support a conviction of this lesser-included offense. We hold that it is. Certainly, if the Defendant had been convicted of facilitation of second degree murder, we have no doubt that this Court would uphold the conviction on a sufficiency challenge. Thus, following the directives of Burns, we conclude that the jury was entitled to an instruction on the lesser-included offense of facilitation of second degree murder.

The State responds that the Defendant has waived this issue for failure to request the instruction in writing at trial, see id. § 40-18-110(c), and, further, that any error is harmless beyond a reasonable doubt. Addressing this issue necessarily requires us to determine the efficacy of the statutory waiver provision included in Tennessee Code Annotated section 40-18-110. A brief review of the history of this recent legislative enactment will be helpful.

Beginning in 1877, our criminal code imposed a duty on trial courts to instruct the jury on lesser-included offenses of felonies with or without a special request. See Acts 1877, ch. 85, § 1; State v. Rickie Boyd, No. W2000-01010-CCA-R3-CD, 2001 WL 1042107, at *2 n.1 (Tenn. Crim. App., Jackson, Sept. 10, 2001). As previously recognized by our supreme court,

> At common law the jury was permitted to find the defendant guilty of any lesser offense necessarily included in the offense charged. This rule originally developed as an aid to the prosecution in cases in which the proof failed to establish some element of the crime charged. But it has long been recognized that it can also be beneficial to the defendant because it affords the jury a less drastic alternative than the choice between conviction of the offense charged and acquittal . . . . [P]roviding the jury with the "third option" of convicting on a lesser included offense ensures that the jury will accord the defendant the full benefit of the reasonable-doubt standard.

---

[3] "A person is criminally responsible for an offense committed by the conduct of another if: [a]cting with intent to promote or assist the commission of the offense, or to benefit in the proceeds or results of the offense, the person solicits, directs, aids, or attempts to aid another person to commit the offense." Tenn. Code Ann. § 39-11-402(2).

-10-

Burns, 6 S.W.3d at 464 (quoting Beck v. Alabama, 447 U.S. 625, 633-34, 100 S.Ct. 2382, 65 L.Ed.2d 392 (1980)). Thus, prior to January 1, 2002, Tennessee Code Annotated section 40-18-110(a) provided that "[i]t is the duty of all judges charging juries in cases of criminal prosecutions for any felony wherein two (2) or more grades or classes of offense may be included in the indictment, to charge the jury as to all of the law of each offense included in the indictment, without any request on the part of the defendant to do so." Tenn. Code Ann. § 40-18-110(a) (1997). See also Tenn. R. Crim. P. 31(c) ("The defendant may be found guilty of an offense necessarily included in the offense charged . . . ."). The effect of this long-standing legislative mandate was to reflect and reinforce what our supreme court has held is a constitutional right deriving from every criminal defendant's right to a jury trial. See State v. Locke, 90 S.W.3d 663, 671 (Tenn. 2002); Ely, 48 S.W.3d at 727 (holding that a criminal defendant's right to have the jury instructed on all lesser-included offenses supported by the evidence adduced at trial is constitutional in nature.) The requirement that the jury be instructed on all appropriate lesser-included offenses "'is to protect the right of trial by jury by instructing the jury on the elements of all offenses embraced by the indictment.'" Ely, 48 S.W.3d at 727 (quoting State v. Bolden, 979 S.W.2d 587, 593 (Tenn. 1998)). "That the right of trial by jury is of constitutional dimension is evidenced by its embodiment in Article I, section 6 of the Tennessee Constitution, which states, 'the right of trial by jury shall remain inviolate.' Accordingly, . . . this constitutional right is violated when the jury is not permitted to consider all offenses supported by the evidence." Ely, 48 S.W.3d at 727. See also State v. Garrison, 40 S.W.3d 426, 432 (Tenn. 2000) (holding that a criminal defendant's constitutional right to trial by jury "dictates that all issues of fact be tried and determined by twelve jurors. . . . Thus, it follows that a defendant has a right to a correct and complete charge of the law, so that each issue of fact raised by the evidence will be submitted to the jury on proper instructions.")

Notwithstanding this long legislative tradition of reinforcing a criminal defendant's right to a jury trial, the Legislature recently amended Tennessee Code Annotated section 40-18-110. Effective January 1, 2002,[4] the statute currently provides, in pertinent part, as follows:

> (a) When requested by a party in writing prior to the trial judge's instructions to the jury in a criminal case, the trial judge shall instruct the jury as to the law of each offense specifically identified in the request that is a lesser included offense of the offense charged in the indictment or presentment. However, the trial judge shall not instruct the jury as to any such offense unless the judge determines that the record contains any evidence which reasonable minds could accept as to the lesser included offense. In making this determination, the trial judge shall view the evidence liberally in the light most favorable to the existence of the lesser included offense without making any judgment on the credibility of such evidence. The trial judge

_____

[4]Acts 2001, ch. 338, § 2, provides that the amendment by the act shall govern all trials conducted on or after January 1, 2002. The instant trial commenced on January 21, 2003. We note that our supreme court has stated in a footnote that the amendment does not apply where the date of the offense precedes January 1, 2002. See State v. Moore, 77 S.W.3d 132, 134 n. 5 (Tenn. 2002). Given that both the offense and the trial predated January 1, 2002, in the Moore case, this comment appears to be dictum. Accordingly, we conclude that the statute, by its own terms, is called into question in the case before us.

shall also determine whether the evidence, viewed in this light, is legally sufficient to support a conviction for the lesser included offense.

(b) In the absence of a written request from a party specifically identifying the particular lesser included offense or offenses on which a jury instruction is sought, the trial judge may charge the jury on any lesser included offense or offenses, but no party shall be entitled to any such charge.

(c) Notwithstanding any other provision of law to the contrary, when the defendant fails to request the instruction of a lesser included offense as required by this section, such instruction is waived. Absent a written request, the failure of a trial judge to instruct the jury on any lesser included offense may not be presented as a ground for relief either in a motion for a new trial or on appeal.

Tenn. Code Ann. § 40-18-110 (2003) (subsections (d), (e) omitted). The legislative history of this enactment reflects the General Assembly's view that judges, prosecutors and defense attorneys were growing increasingly frustrated over the confusion that had developed in the law and procedure defining and governing lesser-included offenses since the Burns decision.[5] Our legislators were also concerned with the growing number of convictions being reversed on appeal, and this piece of legislation was an attempt to address those concerns.[6] In any event, the statute places a criminal defendant's fundamental constitutional right to a correct and complete charge of the law solely within his or her lawyer's hands and, if that lawyer should unwittingly or mistakenly fail to make the appropriate request for a lesser included offense instruction, the defendant suffers the consequences with no right of appeal.[7]

In this case, the Defendant made no written (or oral) request to the trial court for an instruction on facilitation of second degree murder. Accordingly, the State argues that this issue is waived, pursuant to the new statute.[8] We have, however, determined that an instruction on the lesser

---

[5]See, e.g., Tennessee State Library and Archives, Legislative Recording Program, Tennessee General Assembly, 102 nd G.A., House Tapes Nos. 2 (Mar. 3, 2001); 1 (Mar. 21, 2001); 4-78 (May 24, 2001); Senate Tape No. 3 (May 8, 2001).

[6]The General Assembly did not have the benefit of the Ely decision at the time this legislation passed.

[7]Of course, a defendant aggrieved by his or her attorney's failure to request in writing a lesser-included offense instruction would have the ability to raise this issue in the context of a claim of ineffective assistance of counsel in a post-conviction proceeding. This method of addressing the deprivation of a constitutional right does not, however, further the principle of judicial economy. Moreover, in the event a new trial is deemed necessary, it will have been delayed for, potentially, years.

[8]We also note that the Defendant did not raise this issue in his motion for new trial. Generally, issues predicated upon an error in jury instructions are waived if they are not presented in a motion for new trial. See Tenn.R.App.P. 3(e). In this case, however, the Defendant was prohibited from raising this issue in his motion for new trial by the very statute
(continued...)

-12-

included offense of facilitation was warranted by the evidence at trial. Thus are we presented with the issue of the validity of this statutory waiver provision.

As set forth above, our supreme court has determined that a criminal defendant's right to instructions on lesser-included offenses derives from the constitutionally protected right to a trial by jury. "The right to trial by jury is fundamental to the American scheme of justice." State v. Ellis, 953 S.W.2d 216, 220 (Tenn. Crim. App. 1997). Nevertheless, this Court has recognized that the Legislature may confer upon a criminal defendant the right to waive this right "under the appropriate safeguards." Id. Indeed, our Rules of Criminal Procedure permit a criminal defendant to waive his or her right to a jury trial if the waiver is in writing and is knowingly executed. See Tenn. R. Crim. P. 23. "A written waiver by the defendant is intended to impress upon [the defendant] the significance of the right relinquished and provide evidence of his [or her] consent to forego that right." Ellis, 953 S.W.2d at 220.

The waiver of fundamental constitutional rights, such as the right to trial by jury, the privilege against self-incrimination, and the right to confront one's accusers, requires "'an intentional relinquishment or abandonment of a known right or privilege.'" State v. Mackey, 553 S.W.2d 337, 340 (Tenn. 1977) (quoting Johnson v. Zerbst, 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938)). Thus, a waiver of these rights must be demonstrated by an affirmative showing in the record that the defendant's decision was both voluntary and knowledgeable. See id. The defendant's waiver cannot be knowledgeable, however, unless he or she personally has a full understanding of what the waiver connotes and of its consequences. See Blankenship v. State, 858 S.W.2d 897, 904 (Tenn. 1993). As this Court has previously recognized:

> The waiver of any constitutional right is always a serious matter and should only be accepted after a careful determination by the court that the waiver was knowingly and intentionally made. The finding of waiver by the trial court may not be assumed from a silent record, nor may it be implied. Rather, it is a matter of certainty. Moreover, the right to a jury trial is a right personal to the defendant and cannot be waived absent his personal relinquishment of that right.
>
> . . . . Certain constitutional rights, e.g., the right to a jury trial, are so essential to the concept of due process that no lawyer can waive them for a defendant. Accordingly, a judge may not assume that an attorney who waives a jury necessarily invokes the wishes of his client. Moreover, because only the accused can sign a written waiver of his right to a jury trial, it is incongruous to hold that counsel may accomplish orally what he may not accomplish by written word.

---

[8](...continued)

under consideration. Given that the Defendant was statutorily prohibited from raising this issue in his motion for new trial, we will not now fault him for his conformance with the statute.

Thus, absent a written waiver of the right, in order for a criminal defendant to effectively waive his right to a jury trial, he must first be advised by the court of his right to a jury trial, and then, must personally waive the right in open court for the record.

Ellis, 953 S.W.2d at 221-22 (citations and footnotes omitted) (initial emphases added).

Because the right to have the jury charged with all lesser-included offenses encompassed within the indictment and supported by the evidence stems from the right to a jury trial, we consider it a fundamental constitutional right. See Ely, 48 S.W.3d at 727 (holding that a criminal defendant's constitutional right of trial by jury "is violated when the jury is not permitted to consider all offenses supported by the evidence.") (initial emphasis added). However, our research indicates that this particular right is not "merely" a constitutional right personal to the criminal defendant. In State v. Bolden, 979 S.W.2d 587 (Tenn. 1998), our supreme court addressed the issue of whether a criminal defendant may waive his right to an instruction on lesser-included offenses and thereby prevent the jury from being instructed thereon. Although the court analyzed the issue in terms of the (then) statutory requirement that the jury be charged with all lesser-included offenses, and did not address the underlying constitutionality of the defendant's attempted waiver, the court's reasoning remains pertinent. Noting that the statute protected the defendant's right to trial by jury, the court also recognized that "the mandatory nature of the statute indicates that it facilitates the overall truth-seeking function of the process." Id. at 593. The court then quoted favorably and at length from a California Supreme Court case on a similar issue:

> [T]he evidence may show that the defendant is guilty of some intermediate offense included within, but lesser than, the crime charged. A trial court's failure to inform the jury of its option to find the defendant guilty of the lesser offense would impair the jury's truth-ascertainment function. Consequently, neither the prosecution nor the defense should be allowed, based on their trial strategy, to preclude the jury from considering guilt of a lesser offense included in the crime charged. To permit this would force the jury to make an "all or nothing" choice between conviction of the crime charged or complete acquittal, thereby denying the jury the opportunity to decide whether the defendant is guilty of a lesser included offense established by the evidence.

People v. Barton, 12 Cal.4th 186, 47 Cal. Rptr.2d 569, 906 P.2d 531, 536 (Cal. 1995) (emphasis added) (footnote deleted); see also Burns, 6 S.W.3d at 466 (recognizing that depriving a jury of an instruction on a lesser-included offense "forces a jury into an 'all or nothing' decision that, unfortunately, is likely to be resolved against the defendant, who is clearly guilty of 'something.'") We find it significant that, in Ely, our supreme court relied on Bolden in determining that the right to trial by jury encompasses the right to have the jury instructed "'on the elements of all offenses embraced by the indictment.'" Ely, 48 S.W.3d at 727 (quoting Bolden, 979 S.W.2d at 593) (emphasis added).

-14-

Thus, we are presented with an interesting conundrum. On the one hand, a criminal defendant has the right to waive his or her right to a jury trial, so long as the waiver is executed personally, voluntarily, and knowingly. Given the derivative nature of the right to lesser-included offense instructions, we conclude that any waiver of that right would also have to be personal, voluntary and knowing. Yet we are baffled as to how a defendant might be sufficiently educated about the nature of lesser-included offenses such that he or she could knowingly waive them. It is no secret that Tennessee's trial judges and appellate courts have struggled mightily with the many convolutions and permutations that any given trial can present with respect to determining what is and is not a lesser-included offense, and whether the evidence requires that an instruction be given. See Burns and its progeny. It would be a Herculean task indeed to inform a criminal defendant about even the basics of lesser-included offenses, much less the many nuances that reveal themselves with unsettling frequency. Therefore, we must question whether such a waiver is even practically possible.

On the other hand, the right to jury instructions on all appropriate lesser-included offenses is not the defendant's alone. See Bolden. Rather, it is part and parcel of the jury's "overall truth-seeking function." Id., 979 S.W.2d at 593. As such, the requirement that the jury be instructed on lesser-included offenses may not be waivable by either the defendant or the State. Obviously, a defendant may waive a jury entirely and have the facts and issue of his or her guilt determined solely by the trial judge. However, once a defendant exercises his or her constitutional right to have a jury determine his or her guilt or innocence, the jury's primary function is to determine the facts which make up the elements of the offenses, including lesser-included offenses, for which the defendant is on trial. Thus, to permit the waiver of an inherent part of the jury's function -- to determine the facts of any given case -- strikes at the very heart of our system of criminal justice.

We recognize, of course, that "when considering the constitutionality of a statute, courts have a duty to adopt a construction which will sustain the statute and avoid constitutional conflict if at all possible, and this duty requires courts to indulge every presumption and resolve every doubt in favor of the statute's constitutionality." State v. Taylor, 70 S.W.3d 717, 721 (Tenn. 2002). We also recognize that a panel of this Court has applied the waiver provision of Tennessee Code Annotated section 40-18-110(c) without discussion as to its efficacy. See State v. Rashe Moore, No. W2002-01195-CCA-R3-CD, 2003 WL 22888881, at *8 (Tenn. Crim. App., Jackson, Dec. 3, 2003).[9] Nevertheless, we are constrained to hold that the waiver provision of Tennessee Code Annotated section 40-18-110 is an unconstitutional abrogation of a criminal defendant's constitutional right to

---

[9]See also State v. Curtis Buford, No. W2003-00370-CCA-R3-CD, 2004 WL 385200, at *4-6 (Tenn. Crim. App., Jackson, Mar. 2, 2004) (recognizing that the waiver provision of amended section 40-15-110 was "controlling" but nevertheless addressing on the merits the defendant's contentions regarding omitted lesser-included offense instructions); State v. Nesha Newsome, No. W2002-01306-CCA-R3-CD, 2003 WL 23100597, at *6-7 (Tenn. Crim. App., Jackson, Dec. 30, 2003) (applying the waiver but also determining on the merits that the trial court's failure to charge a lesser-included offense was harmless); State v. Brian Larice Cureton, No. M2002-00835-CCA-R3-CD, 2003 WL 22303084, at *11-12 (Tenn. Crim. App., Nashville, Oct. 8, 2003) (acknowledging the applicability of the waiver provision of amended section 40-18-110, but also determining that the failure to charge a lesser-included offense was harmless beyond a reasonable doubt).

have the jury charged on all offenses included within the indicted offense and supported by the proof adduced at trial. Accordingly, we hold that the Defendant's failure to request an instruction on facilitation of second degree murder does not waive the Defendant's right to have the jury so instructed. Neither does it relieve this Court from determining whether the trial court's error in omitting the instruction entitles the Defendant to a new trial.

We review a trial court's erroneous failure to provide a lesser-included offense instruction under the constitutional harmless error standard: that is, in order to avoid reversal, we must determine that the error was harmless beyond a reasonable doubt. See Ely, 48 S.W.3d at 727. See also State v. Bowles, 52 S.W.3d 69, 77 (Tenn. 2001) ("because a failure to give lesser-included offense instructions is of constitutional dimensions, it 'is "presumed" reversible; it will result in reversal unless the State convinces the reviewing court beyond a reasonable doubt that the error did not affect the outcome of the trial.'") In conducting this inquiry, "the reviewing court must determine whether a reasonable jury would have convicted the defendant of the lesser-included offense instead of the charged offense." State v. Richmond, 90 S.W.3d 648, 662 (Tenn. 2002). That is, "the reviewing court must determine whether it appears beyond a reasonable doubt that the trial court's failure to instruct on the lesser-included offense did not affect the outcome of the trial." Id. "In making this determination, a reviewing court should conduct a thorough examination of the record, including the evidence presented at trial, the defendant's theory of defense, and the verdict returned by the jury." Allen, 69 S.W.3d at 191.

In this case, the evidence clearly established that the Defendant was a participant with three other men in beating the victim, who eventually died as a result of the attack. There was no proof, however, establishing which of the four men struck the fatal blow(s). One of the State's witnesses testified that she saw the Defendant strike the victim several times with a "plank," but that the Defendant did not strike the victim after he fell to the ground. Another of the State's witnesses testified that he saw four men taking turns hitting a man on the ground, but he did not specifically identify the Defendant as one of the assailants. The Defendant admitted to the police that he struck the victim once with a sign after the victim had fallen to the ground. The Defendant told the police that he got involved in the fight because the victim tried to stab his friend, and he further claimed to have been drunk at the time. This is the only direct proof of the Defendant's state of mind at the time of the attack; no one testified as to any threats or intentions against the victim voiced by the Defendant. Mr. Woods pled guilty to second degree murder in conjunction with the victim's death and testified that he was the one that "did the damage that caused the death."

The jury was presented with four options in this case: to convict the Defendant of second degree murder, voluntary manslaughter or reckless homicide, or to acquit him entirely. Each of the first three alternatives resulted in the Defendant being convicted as a principal in the victim's death. The jury was given no option to convict the Defendant as a participant who acted on behalf of his cohort, but who did not intend to assist in actually killing the victim. Yet, that is the crucial difference between being criminally responsible as a principal for the conduct of another, and being criminally responsible for the facilitation of another's felonious conduct. Compare Tenn. Code Ann. § 39-11-402(2) with Tenn. Code Ann. § 39-11-403(a). While we have previously determined that

-16-

the proof is sufficient to support the Defendant's second degree murder conviction, the proof in this case also supports the Defendant's theory that he was a mere facilitator in the victim's death. We simply cannot hold <u>beyond a reasonable doubt</u> that the jury would not have convicted the Defendant of the lesser-included offense of facilitation had it been given that option. Accordingly, we have no choice but to reverse the Defendant's conviction of second degree murder and remand this matter for a new trial.

That the jury did not convict the Defendant of either of the lesser-included offenses actually charged does not change our conclusion. We recognize, of course, that our supreme court has held that "by finding the defendant guilty of the highest offense to the exclusion of the immediately lesser offense, . . . the jury necessarily rejected all other lesser offenses . . . ." <u>State v. Williams</u>, 977 S.W.2d 101, 106 (Tenn. 1998). In that case, the defendant was charged with and convicted of first degree premeditated murder. The jury was charged with the lesser-included offenses of second degree murder and reckless homicide, but not voluntary manslaughter. The jury convicted the defendant of first degree premeditated murder, and the defendant complained that he had been prejudiced by the trial court's failure to charge the jury with voluntary manslaughter. The supreme court rejected the defendant's contention on the basis that, since the jury rejected second degree murder, the immediately lesser included offense of first degree premeditated murder, the jury would also have rejected voluntary manslaughter even if it had been charged. <u>See id.</u> ("the trial court's erroneous failure to charge voluntary manslaughter is harmless beyond a reasonable doubt because the jury's verdict of guilt on the greater offense of first degree murder and its disinclination to consider the lesser included offense of second degree murder clearly demonstrates that it certainly would not have returned a verdict on voluntary manslaughter.")

In the case of second degree murder, there are (at least) two immediately lesser offenses: voluntary manslaughter, as was charged in this case, and facilitation of second degree murder, the lesser-included offense at issue. Voluntary manslaughter is an immediately lesser offense under part (b) of the <u>Burns</u> formula; facilitation is an immediately lesser offense under part (c). Thus, they are "parallel" immediately lesser offenses of second degree murder, and the jury's failure to convict of the one does not necessarily imply that the jury would not have convicted of the other. That is, the holding of <u>Williams</u> simply does not apply in this instance.

In sum, we hold that the trial court committed reversible error in failing to charge the jury on the lesser-included offense of facilitation of second degree murder. We further hold that the waiver provision of Tennessee Code Annotated section 40-18-110(c) is constitutionally infirm as violative of a criminal defendant's fundamental constitutional right to have the jury charged on all lesser-included offenses embraced by the indictment and supported by the proof adduced at trial. Accordingly, we reverse the Defendant's conviction of second degree murder and remand this matter for a new trial.[10]

---

[10]The Defendant has raised no issue with respect to his sentence, and our disposition of this matter renders consideration of the Defendant's sentence moot. Nevertheless, we recognize that, in light of the United States Supreme

(continued...)

## MOMON ERROR

Although not raised by either party, we note that the record contains no waiver by the Defendant of his fundamental constitutional right to testify. In Momon v. State, 18 S.W.3d 152 (Tenn. 1999), our supreme court recognized that "the right of a criminal defendant to testify in his or her own behalf is a fundamental constitutional right." Id. at 161. Accordingly, "the right may only be waived personally by the defendant." Id. Because the right to testify is both fundamental and personal, it "may only be waived if there is evidence in the record demonstrating 'an intentional relinquishment or abandonment of a known right or privilege.'" Id. at 162 (quoting Johnson v. Zerbst, 304 U.S. 458, 464, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938)). Thus, "[t]he waiver of a fundamental right will not be presumed from a silent record, and the courts should indulge every reasonable presumption against the waiver of a fundamental right." Id. (citations omitted).

To protect this personal and fundamental right to testify, our supreme court in Momon instructed our trial courts to thenceforward require a hearing, outside the jury's presence, in order that defense counsel inquire of the defendant whether he or she had made a knowing, voluntary and intelligent waiver of his or her right to testify. See id. at 162. This Court has previously determined that "the failure to conduct a hearing pursuant to Momon to determine whether the [d]efendant did personally waive his right to testify was plain error." State v. Posey, 99 S.W.3d 141, 148 (Tenn. Crim. App. 2002). Accordingly, the Defendant's failure to raise this issue in his motion for new trial or in his brief before this Court does not preclude us from considering this issue. See Tenn. R. Crim. P. 52(b).

Where, as here, there is no evidence in the record that the waiver procedure established by Momon was followed, and no evidence in the record to establish that the Defendant's right to testify was otherwise personally waived, this Court must remand the case to the trial court for a determination of whether the Defendant personally waived his right to testify. See Posey, 99 S.W.3d at 149. If the trial court determines that the Defendant did not personally waive this fundamental constitutional right, the State must establish that the denial of the Defendant's right to testify was harmless beyond a reasonable doubt. See Momon at 168; Posey at 149. If the State fails in this endeavor, the Defendant will be entitled to a new trial. See Posey at 149.

## CONCLUSION

We hold that the evidence is sufficient to support the Defendant's conviction of second degree murder. However, because the trial court committed reversible error in failing to charge the jury on the lesser-included offense of facilitation to commit second degree murder, we must vacate the Defendant's conviction and remand this matter for a new trial. Should further appellate review uphold the Defendant's conviction, this matter must nonetheless be remanded for a determination

---

[10](...continued)
Court's recent opinion in Blakely v. Washington, 72 USLW 4546, 124 S.Ct. 2531 (June 24, 2004), the efficacy of the Defendant's sentence, enhanced three and one-half years over the presumptive sentence, may otherwise be subject to question.

of whether the Defendant personally waived his right to testify and, if not, whether that error is harmless beyond a reasonable doubt.

_____
DAVID H. WELLES, JUDGE