**STATE of Tennessee, Appellee,**

v.

**Kevin Todd ELLIS, Appellant.**

Court of Criminal Appeals of Tennessee, at Knoxville.

April 16, 1997.

No Permission to Appeal Applied for to the Supreme Court.

---

County Criminal Court, sitting without a jury, found that the proof supported a finding of guilt in this case, but delayed entry of judgment for ninety days conditioned upon the appellant's payment of restitution to the victims. Because the appellant failed to comply with the court's order of restitution, the trial court entered an order on July 10, 1995, finding the appellant guilty of theft over $1000. A sentencing hearing was held on October 16, 1995, at which time the trial court imposed a split-confinement sentence of three years with thirty days to be served in jail, followed by placement with the local community corrections program for the remainder of his sentence. The appellant appeals his conviction and sentence contending that:

I. He was denied his right to a trial by jury;

II. The evidence is insufficient to convict him of theft over $1000;

III. The length of the sentence imposed by the trial court is excessive; and

IV. The trial court should have granted "straight probation."

After a review of the record, we reverse the judgment of the trial court and remand for a new trial.

Joe H. Walker, Public Defender, Walter B. Johnson, II, Asst. Public Defender, Harriman, for Appellant.

Charles W. Burson, Attorney General and Reporter, Timothy F. Behan, Assistant Attorney General, Nashville, Charles Hawk, District Attorney General, Frank Harvey, Asst. District Attorney General, Kingston, for Appellee.

## OPINION

HAYES, Judge

The appellant, Kevin Todd Ellis, was charged by presentment with theft of property over $1,000 but less than $10,000, a class D felony. On November 29, 1994, the Roane

## I. Background

During late February or the early part of March, 1994, the appellant orally contracted with Clarence and Barbara Dees to construct a seawall and private use boat dock at their residence in the Ten Mile Community of Roane County. The Dees' property is located on Gordon Branch Hollow of Watts Bar Lake. The permits necessary for the construction of the improvements were obtained by the Dees from TVA. The contract consisted of two phases: (1) excavation of dirt in order to permit construction of the seawall and dock and (2) construction of the seawall and dock. Conflicting testimony was presented at trial as to the agreed contract price. The contract price, however, is not relevant to our determination of the issue before us.[1] Time constraints were important

---

1. The appellant testified that the agreed price for the excavation work was $1,241.00 and $2,173.00 was the price agreed upon for the construction of the seawall and dock. We are

due to the elevation of water in Watts Bar Lake. In their original agreement, another contractor, who had been contacted by the appellant, had bid the excavation work. As this contractor failed to begin the work as scheduled, the appellant agreed, for the same contract price, to perform the excavation phase as well.

On March 14, 1994, Dees paid $1,241.00 in advance to the appellant in order to provide the appellant funds to rent a "bobcat" machine and begin the dirt work. Although payment was made by means of a personal check, Dees requested a receipt from the appellant, which was provided.[2] The excavation phase of the contract was completed on March 21, 1994. This portion of the contract is not in material dispute other than Dees' testimony that he was not pleased with the work performed.

On March 17, the appellant contacted Dees to inquire about funds necessary to begin construction of the seawall and private dock. That evening, Dees delivered a check to the appellant in the sum of $2,500.00. Dees stated that he paid the appellant more than the agreed price because the appellant encountered problems in excavating. Again, the appellant provided Dees a receipt for the check.

The next day, the appellant attempted to cash Dees' check, however, this proved unsuccessful due to insufficient funds in Dees' account. The appellant contacted Dees and later returned the check upon Dees' affirmation to "make the check good." The appellant maintains that this was his last contact with the Dees. However, he also testified that, after the Dees made an official complaint, he offered to replace the dirt he had excavated and "call it even."

Clarence and Barbara Dees do not dispute the check for $2500 nor do they dispute that they had insufficient funds to cover the check. However, they both testified, that, on March 18, they met the appellant at the Y–12 Credit Union in West Knoxville, where they gave the appellant $1700 in cash for the appellant to purchase materials. On this occasion, no receipt for the cash was requested by the Dees. However, a receipt indicating the withdrawal of $1700 from the Dees' checking account was introduced into evidence. The appellant denies both meeting the Dees in West Knoxville and receiving $1700 in cash from them. The appellant testified that he would not have accepted $1700 in full payment for construction of the seawall and private dock because the materials alone would have cost him "a little over $1,800.00."

The proof reflects that fifteen (15) beams and three (3) bags of concrete mix were delivered to the Dees' property to begin construction of the seawall and dock. The exact date of delivery is in dispute. The appellant testified that the beams were delivered first, because they had to be secured in the ground. He stated that they were delivered on "Thursday," prior to his receiving the $2500 check from Dees. The appellant testified that no other materials were purchased because the Dees' check was found to be insufficient the following day and no other payment was received. Mr. Dees testified that he thought the beams and concrete were delivered "the same day I paid him the $1700 cash; if not, it was the day after."

▮▮ At the conclusion of the evidence, the trial court remarked that this case should "have proceeded as a misapplication of contract funds, rather than a theft case."[3]

---

2. The appellant testified that he usually does not provide receipts for payments by check. However, since the Dees insisted upon a receipt, he purchased a receipt book to accommodate their request.

3. The appellant was charged under the general theft statute, Tenn.Code Ann. § 39–14–103, rather than the statute dealing specifically with contractor's misappropriation of funds. Tenn.Code Ann. § 39–11–109, gives the district attorney general discretion to proceed under either a general or specific statute. See State v. Williams,

unable to reconcile the different contract prices stated by Mr. Dees in his testimony. See, e.g., Tr. at 3; Tr. at 19; Tr. at 25; Tr. at 35. The State, in its brief, takes the position that the total contract price for *both phases* was $2100; yet, Dees' testimony reflects that he originally paid a total of $3,741.00. See Brief for State at 3. Notwithstanding the conflicting testimony as to the total contract price, the issue central to this case remains whether the appellant received $1700 in cash from the Dees.

Nonetheless, due to the withdrawal of the $1700, the testimony of Clarence and Barbara Dees, and the partial delivery of materials, the court found that the appellant had been paid $1700. The court delayed entry of judgment for ninety days in the event that restitution was paid. If restitution was paid within this time period, the court would dismiss the case. No restitution was paid. On July 11, 1995, the trial court entered an order finding the appellant guilty of theft, a class D felony.

## II. Denial of Jury Trial

■ In his first issue, the appellant contends that he was denied his constitutional right to a trial by jury. Specifically, he avers that there is no written waiver of this right as required by Tenn.R.Crim.P. 23. The State concedes that no written waiver exists. However, the State argues that the record clearly shows a voluntary relinquishment of this right, and as such, a written waiver is not necessary. *See State v. Bobo,* 814 S.W.2d 353, 359 (Tenn.1991).

Following the opening of the court, the following colloquy occurred between the Court, the appellant's attorney, Mr. Johnson, and the Assistant Attorney General, Frank Harvey:

> COURT: Mr. Ellis is charged with the theft of property valued at over $1,000, but less than $10,000.
>
> JOHNSON: That's correct, Your Honor.
>
> COURT: Being the property of Clarence and Barbara Dees, without their consent. How does the defendant plead?
>
> JOHNSON: Not guilty, your honor.
>
> COURT: Is the State ready to proceed?
>
> [GENERAL HARVEY]: Yes, Your Honor. For the record, I think all the parties need to acknowledge that we have agreed that this will be tried without the benefit of a jury.

No. 03C01–9303–CR–00072, 1994 WL 413830 (Tenn.Crim.App. at Knoxville, August 3, 1994), *perm. to appeal denied,* (Tenn. Apr. 3, 1995). The existence of a specific, applicable statute does not remove that discretion. *Id.*

> COURT: Yes. Mr. Johnson, your client needs to sign a waiver of jury.
>
> JOHNSON: Well, we don't have that form here.
>
> COURT: Proceed?
>
> JOHNSON: Yes, Your Honor.

■ The right to trial by jury is fundamental to the American scheme of justice. *Duncan v. Louisiana,* 391 U.S. 145, 149, 88 S.Ct. 1444, 1447, 20 L.Ed.2d 491 (1968); *see also* U.S. CONST. art. Ill, § 2, cl. 3 (1787); U.S. CONST. amend. 6 (1791); TENN. CONST. art. 1, § 6 (1870). Although there is no common law right to waive a jury trial, *Singer v. United States,* 380 U.S. 24, 31, 85 S.Ct. 783, 788, 13 L.Ed.2d 630 (1965), nothing prohibits the legislature from conferring such a right under the appropriate safeguards. *State v. Durso,* 645 S.W.2d 753, 758 (Tenn. 1983). *See also Patton v. United States,* 281 U.S. 276, 312, 50 S.Ct. 253, 263, 74 L.Ed. 854 (1930) (holding that right to jury trial may be waived). Tenn.R.Crim.P. 23 confers such a right, providing:

> In all criminal cases except small offenses, trial shall be by jury unless the defendant waives a jury trial in writing with the approval of the court and the consent of the district attorney general. The defendant may waive jury trial at any time before the jury is sworn.[4]

(emphasis added).

■ Thus, under Rule 23, a defendant may waive a jury trial if the waiver is in writing and is knowingly executed. A written waiver by the defendant is intended to impress upon him the significance of the right relinquished and provide evidence of his consent to forego that right. *See United States v. Robertson,* 45 F.3d 1423, 1431 (10th Cir.), *cert. denied,* —— U.S. ——, 116 S.Ct. 133, 133 L.Ed.2d 81 (1995) (citing *United States v. Martin,* 704 F.2d 267, 271 (6th Cir.1983)); *see also Brown v. Burns,* 996 F.2d 219, 220 (9th Cir.1993) (the purpose of a

4. The relevant portion of Federal Rule 23 is identical to our Rule 23. FED.R.CRIM.P. 23(a) provides, in pertinent part: "[c]ases required to be tried by jury shall be so tried unless the defendant waives a jury trial in writing with the approval of the court and the consent of the government."

written waiver is to provide the "best record evidence of the express consent of a defendant"). Nonetheless, noncompliance with Rule 23's requirement of a written waiver does not *ipso facto* render a waiver invalid so long as the record "clearly show[s] a voluntary relinquishment of the rights to be tried by a common law jury." *State v. Bobo*, 814 S.W.2d at 359. And, although an oral stipulation on the record may satisfy the rule absent a written waiver, it must appear from the record that the defendant *personally* gave express consent in open court. *See United States v. Taylor*, 498 F.2d 390, 392 (6th Cir.1974).

In the present case, the parties do not dispute the fact that no written waiver was executed by the appellant. However, the State contends that the record sufficiently supports a voluntary relinquishment of the appellant's right to a jury trial to satisfy the exception to Rule 23 created in *Bobo*. The only indication in the record that the appellant intended to waive his right was the statement of the prosecutor that "we have agreed that this will be tried without the benefit of the jury" and defense counsel's acquiescence to the trial judge's inquiry whether to "proceed" with the trial. Although the appellant did not voice any objection to this procedure, there is no indication that the appellant, personally, relinquished his right to a jury trial.

 The waiver of any constitutional right is always a serious matter and should only be accepted after a careful determination by the court that the waiver was knowingly and intentionally made. *See Estrada v. United States*, 457 F.2d 255, 256 (7th Cir.),

*cert. denied*, 409 U.S. 858, 93 S.Ct. 143, 34 L.Ed.2d 104 (1972). The finding of waiver by the trial court may not be assumed from a silent record, nor may it be implied. *Patton*, 281 U.S. at 312, 50 S.Ct. at 263. Rather, it is a matter of certainty.[5] Moreover, the right to a jury trial is a right personal to the defendant and cannot be waived absent his personal relinquishment of that right. *Taylor v. Illinois*, 484 U.S. 400, 418, 108 S.Ct. 646, 657, 98 L.Ed.2d 798 (1988).

 The record is silent as to whether the appellant personally relinquished his right to a jury trial. However, the State contends that defense counsel relinquished the right on behalf of his client. We cannot accept defense counsel's colloquy with the court as a valid waiver on behalf of the appellant. Certain constitutional rights, e.g., the right to a jury trial, are so essential to the concept of due process that no lawyer can waive them for a defendant.[6] *Taylor v. Illinois*, 484 U.S. at 418, 108 S.Ct. at 657; *see also Brookhart v. Janis*, 384 U.S. at 7, 86 S.Ct. at 1248. Accordingly, a judge may not assume that an attorney who waives a jury necessarily invokes the wishes of his client.[7] *United States v. Virginia Erection Corp.*, 335 F.2d 868, 870 (4th Cir.1964). Moreover, because only the accused can sign a written waiver of his right to a jury trial, it is incongruous to hold that counsel may accomplish orally what he may not accomplish by written word.

 Thus, absent a written waiver of the right, in order for a criminal defendant to effectively waive his right to a jury trial, he must first be advised by the court of his right to a jury trial,[8] and then, must *personally*

---

5. There is a presumption against the waiver of constitutional rights, and for a waiver to be effective it must be clearly established that there was "an intentional relinquishment or abandonment of a known right or privilege." *Brookhart v. Janis*, 384 U.S. 1, 4, 86 S.Ct. 1245, 1247, 16 L.Ed.2d 314 (1966) (citing *Johnson v. Zerbst*, 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938)).

6. However, certain rights of the accused, e.g., cross-examination, disclosure of witnesses, subpoena witnesses, may be waived by his counsel for tactical reasons. *Taylor v. Illinois*, 484 U.S. at 418, 108 S.Ct. at 657–58.

7. The assertion by counsel of a defendant's waiver is presumably less reliable than the express written or oral consent of the accused even when coupled with the inference of acquiescence drawn from the defendant's failure to protest. *United States v. Guerrero–Peralta*, 446 F.2d 876, 877 (9th Cir.1971); *see also Estrada v. United States*, 457 F.2d at 256; *Edwards v. Sasser*, 462 F.Supp. 374, 377 (E.D.Va.1979).

8. The United States Supreme Court, in *Patton v. United States*, 281 U.S. at 313, 50 S.Ct. at 263, holding that the right to a jury trial may be waived, noted:

... And the duty of the trial court in that regard is not to be discharged as a mere mat-

waive the right in open court for the record. Although not required by Rule 23, the preferred practice, in absence of a written waiver, is for the trial court to inform the defendant of his right to a trial by jury, the nature of the right, and the consequences of waiving it. Specifically, the court should advise the defendant that (1) he is entitled to have twelve members of the community decide his innocence or guilt of the offense(s) charged; (2) the defendant may take part in jury selection; (3) jury verdicts must be unanimous; and (4) the court alone decides guilt or innocence if the defendant waives a jury trial. *See Patton,* 281 U.S. at 288, 50 S.Ct. at 254; *United States v. Robertson,* 45 F.3d at 1432. This colloquy insures a voluntary, knowing and intelligent waiver; promotes judicial economy by avoiding challenges on appeal or collateral attack; and emphasizes to the defendant the seriousness of his decision. *United States v. Cochran,* 770 F.2d 850, 852 (9th Cir.1985) (citations omitted). With this colloquy on the record, courts can insure that such a waiver is valid. *Id.*

■ In the present case, the trial court did not address the appellant as to his right to a jury trial, nor did the appellant *personally* forgo this right. Consequently, we cannot conclude that the appellant voluntarily relinquished his right to a jury trial by the acquiescence of his trial attorney. As the denial of the right to a jury trial cannot be deemed harmless error, we reverse the judgment of the trial court. In view of the foregoing ruling, we find it unnecessary to address the appellant's remaining issues. The judgment in this case is reversed and this cause is remanded to the trial court for a new trial consistent with this opinion.

HAYES, J., concurs.

WOODALL, J., dissents in separate opinion.

WOODALL, Judge, dissenting.

I must respectfully dissent from the majority's opinion in this case. While I wholeheartedly agree with Judge Hayes that the

right to trial by jury is "fundamental to the American scheme of justice," I believe the record reflects, at the very least, that the Defendant waived his right to object to being tried without a jury. It is clear to me from this record that everyone involved in this case appeared on the day of trial with the understanding the case would proceed as a bench trial. The trial court addressed Defendant's counsel and told him a written waiver of jury trial needed to be signed by the Defendant. The Defendant's counsel immediately responded "well, we don't have that form here."

Instead of insisting that the trial be continued or otherwise delayed until a written waiver could be obtained, Defendant's counsel acknowledged that the trial could proceed as a bench trial. Neither the Defendant nor his counsel demanded or requested a jury trial.

The trial was held in November 1994. At the conclusion of all of the proof, the trial judge announced a recess and informed the attorneys that he wanted to speak with the attorneys in chambers. The discussion in chambers is not a part of the record. When court resumed, the trial judge announced that he was delaying entry of judgment against the Defendant, upon the condition that if restitution was paid in full to the victims, there would not be a judgment of guilty entered against the Defendant. The Defendant did not pay any restitution, and the sentencing hearing was held in October 1995. The record indicates that the case had been set for hearing and continued at least twice, with the trial court granting extensions of the deadline for the Defendant to pay restitution. The case was also apparently continued for a pre-sentencing report to be completed. The Defendant did not raise the issue regarding a lack of proper waiver of a jury trial during the time periods given by the trial court for the Defendant to pay restitution in order to avoid entry of a judgment against him. The Defendant did not raise the issue regarding waiver of the jury

ter of rote, but with sound and advised discretion with an eye to avoid unreasonable or undue departures from that mode of trial or

from any of the essential elements thereof, and with a caution increasing in degree as the offenses dealt with increase in gravity.

trial at the time of the sentencing hearing in October 1995.

There is a fundamental difference between a defendant being denied his or her right to a trial by jury and a situation, as in this case, where the Defendant participates in proceedings that may cause error by the trial court, and he or she fails to take whatever action may be necessary to "prevent or nullify the harmful effect of an error." T.R.A.P. 36(a).

Therefore, in this particular case, I would hold that Defendant has waived his right to raise this issue on direct appeal of his conviction. T.R.A.P. 36(a).