IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs June 8, 2021

**DARRELL WAYNE BUMPAS v. STATE OF TENNESSEE**

**Appeal from the Criminal Court for Davidson County
No. 2014-D-2676    Steve R. Dozier, Judge**

——————————————————

**No. M2020-00948-CCA-R3-PC**

——————————————————

Petitioner, Darrell Wayne Bumpas, appeals the denial of his post-conviction petition, arguing that the post-conviction court erred in concluding that he received effective assistance of counsel.  Following our review of the entire record and the briefs of the parties, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P.3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

JILL BARTEE AYERS, J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS, P.J., and ROBERT H. MONTGOMERY, JR., J., joined.

Ryan C. Caldwell, Nashville, Tennessee, for the appellant, Darrell Wayne Bumpas.

Herbert H. Slatery III, Attorney General and Reporter; Ruth Anne Thompson, Senior Assistant Attorney General; Glenn R. Funk, District Attorney General; and Jenny Charles, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**Factual and Procedural Background**

On October 31, 2014, the Davidson County Grand Jury indicted Petitioner for one count each of forgery over $1,000, criminal simulation over $1,000, theft of property over $1,000, and two counts of identity theft.  Following a bench trial,  Petitioner was convicted as charged, and was sentenced as a career offender to concurrent sentences for an effective sentence of twelve years.  This Court affirmed Petitioner's convictions on appeal. *State v. Darrell Wayne Bumpas*, No. M2017-00746-CCA-R3-CD, 2018 WL 817289 (Tenn. Crim.

App. at Nashville, Feb. 12, 2018) *perm. app. denied.* The facts of this case as summarized on direct appeal are as follows:

> At trial, Dennis Tulpa testified that on July 24, 2014, he worked as a personal banker and teller at Avenue Bank in Green Hills. Mr. Tulpa recalled that, around 4:15 p.m., a man entered the bank and cashed check number 17174 from "Tennessee Valley Home." Mr. Tulpa reviewed two photographs taken from inside Avenue Bank, and he identified himself in the photographs and stated that the photographs depicted where he worked. He noted that the photographs had a time and date stamp, which read "7–24–2014 at 4:18 [p.m.]" Mr. Tulpa testified that the photographs were captured on July 24, 2014, and kept in the regular course of business by Avenue Bank. He explained that the photographs had been printed out from a bank computer where they were stored.
>
> Mr. Tulpa identified [Petitioner] as the customer depicted in the photographs. He stated that [Petitioner] was a "non-client" of Avenue Bank and did not hold an account at the bank. Mr. Tulpa explained that tellers were instructed pursuant to bank policy that when cashing checks from non-clients they should ask to see a driver's license and copy the information from the license onto the back of the check next to the non-client's signature. Mr. Tulpa recalled that, when [Petitioner] approached Mr. Tulpa to cash check number 17174, the check bore [Petitioner]'s signature, but he did not see [Petitioner] physically sign it. Mr. Tulpa viewed a copy of the check that was presented by [Petitioner]. Mr. Tulpa testified that he wrote the driver's license number, date of birth, expiration date and the date the driver's license was issued onto the back of the check. Mr. Tulpa stated that he got the information from the driver's license [Petitioner] presented to him. Mr. Tulpa noted that the photograph on the driver's license appeared to match [Petitioner]. After taking this information, Mr. Tulpa cashed the check, giving [Petitioner] $1,810.30.
>
> Mr. Tulpa explained that the owner of the account on which the check was drawn, Tennessee Valley Homes, Inc. ("TVH"), later contacted Avenue Bank and reported that the check did not belong to them. The bank researched the claim, compared the check cashed by [Petitioner] to images of checks belonging to TVH and determined the check cashed by [Petitioner] was counterfeit. Mr.

Tulpa stated that it was the policy of the bank that it would not pass along the loss to the client/account holder when a counterfeit check was passed. Instead, the bank incurred the loss of $1,810.30. Mr. Tulpa testified that he specifically remembered [Petitioner] because Mr. Tulpa did not "cash bad checks every day, so the incident [stood] out in [his] mind."

Detective Kevin Allen of the Metropolitan Nashville Police Department (MNPD) testified that, on July 24, 2016, he responded to Avenue Bank to investigate a possible fraudulent check passed at the bank. The bank provided Detective Allen with still photographs taken from the bank's security cameras that day, as well as a copy of the signed check. Detective Allen compared the date of birth, driver's license number, and driver's license issuance and expiration dates that were written on the back of the check with the information on [Petitioner]'s driver's license and found that the information on the check matched [Petitioner]'s driver's license. Detective Allen also noted that the photograph of [Petitioner] on his driver's license resembled the man displayed in the still photographs provided by the bank. Detective Allen testified that the routing number and account number of the check passed by [Petitioner] matched the routing and account numbers for TVH's account. After speaking with bank personnel, Detective Allen spoke to a representative with TVH, Loraine Cash, about the check. Following his conversation with Ms. Cash, Detective Allen presented the case to the grand jury.

Loraine Cash testified that she was the office manager at TVH and that she kept the records of the company's financial transactions as part of her job. Ms. Cash recalled that on July 24, 2014, she "was doing the bank reconciliation and noticed that [she] had a dollar amount on the bank rec[onciliation] that was not in [her] computer." Ms. Cash spoke to a representative from Avenue Bank about the check, and the bank provided her with a copy of the check passed by [Petitioner]. Ms. Cash testified that the company name listed on the check, "Tennessee Valley Home," was wrong; she explained that the correct name was "Tennessee Valley Homes." She further noted that the date line on the check was in the wrong place. Ms. Cash said that, upon further investigation, she discovered that she had in her possession TVH's check number 17174, and it had not been issued. She stated that the check was "still in the box." Additionally, Ms. Cash searched the company's list of vendors to see if [Petitioner]

- 3 -

had worked for TVH previously. [Petitioner]'s name, however, was not on the vendor list.

Ms. Cash testified that only four people had "signature line authority" to write checks for TVH—Darrel Reifschneider, James Franks, Shelly Molar, and herself. Ms. Cash explained that Mr. Reifschneider was the secretary of TVH and that Mr. Franks was the president. She said that she was familiar with both of their signatures, as well as Ms. Molar's, and stated that their signatures did not look like the signatures on the check passed by [Petitioner]. She explained that it took two joint signatures for a check to be properly issued by TVH. Based on all of this information, Ms. Cash determined that the check passed by [Petitioner] was not issued by TVH and was, therefore, counterfeit. Ms. Cash stated that, due to Avenue Bank's policy, TVH did not incur any financial loss. The bank put the $1,810.30 back into TVH's account.

Darrel Reifschneider testified that he was part-owner of TVH, along with James Franks. Mr. Reifschneider explained that he was not involved in the day-to-day operations of the company and that Mr. Franks was the "operating partner." Mr. Reifschneider stated that he did not give permission to [Petitioner] or anyone else "to create another check other than [TVH's] company check." Mr. Reifschneider testified that neither of the signatures listed on the check passed by [Petitioner] were his. He stated that, to his knowledge, TVH had never employed [Petitioner].

Jane Eakes, a certified document examiner, testified as an expert in handwriting analysis for the State. She explained that she had been provided with twenty known samples of [Petitioner]'s signature, which she compared to the signature on the check passed by [Petitioner] at Avenue Bank. Ms. Eakes testified that, based on her training and experience, "all of these signatures were written by the same person" and that [Petitioner] signed the check passed at Avenue Bank on July 24, 2014.

[Petitioner] testified that on July 24, 2014, he went to Avenue Bank in Green Hills and cashed a check that he had received for "some work that [he] had done two weeks prior." When shown the copy of the check passed at Avenue Bank that day, [Petitioner] said that it "look[ed] like" the check he cashed. He agreed that his signature

- 4 -

was on the back of the check, but he noted that his name was misspelled on the front of the check where he was listed as the payee and that his home address was listed incorrectly. [Petitioner] stated that he did not notice that TVH was misspelled on the front of the check and stated that the check "appear[ed] to be real."

[Petitioner] explained that he worked as a subcontractor, and two weeks prior, he responded to an ad on Craigslist about cleaning up an area prior to a building project. [Petitioner] explained that the work included demolishing a mobile home, cutting down some trees, removing brush, and "tak[ing] all of the trash." [Petitioner] stated that he could not recall the name of the man from Craigslist who hired him to do the work but stated that the man worked for TVH. [Petitioner] testified that he met with the man who hired him "out [in] East Nashville" and that the man spoke over the telephone to a lady named "Ms. Merriweather," who was "over the accounts of [TVH.]" [Petitioner] stated that he gave Ms. Merriweather a copy of his identification and a copy of his contractor's license. He denied altering the check before it was cashed, and he denied falsifying the front of the check to make it appear that TVH had written him a check. [Petitioner] stated that the man who had hired him gave him the check. He explained that he received only $400 for his work out of the $1,800 and that the man who hired [Petitioner] took the rest of the money to "pay the other workers."

At the conclusion of testimony, the trial court found [Petitioner] guilty as charged. On each count, the trial court sentenced [Petitioner] as a Career Offender to twelve years with sixty percent release eligibility. The trial court ordered the sentences to run concurrently and for [Petitioner] to serve his sentence in confinement. The judgments of conviction were entered on October 27, 2016.

*Id.* at *1-4.

*Post-conviction-Hearing*

At Petitioner's post-conviction hearing on November 12, 2019, Petitioner testified that his original meeting with his trial counsel lasted three minutes at Starbucks and that he never spoke to his attorney prior to trial. Petitioner complained that his attorney did not investigate his case, nor did his attorney provide him with a copy of the State's discovery.

Petitioner testified that the original check in question, rather than a copy of the check, should have been introduced at trial. Petitioner also testified that trial counsel failed to appear in court for prior hearings and when Petitioner arrived in court for what he thought was a hearing, he learned that his case was going to be heard as a bench trial. According to Petitioner, he did not waive his right to a jury trial and told trial counsel that he wanted a jury. He also stated that he objected on the record to the bench trial prior to the commencement of same. Petitioner testified that trial counsel told him he was being forced into having a bench trial. Petitioner explained that he was unaware he was going to court for a trial and objected because his witnesses were not present. He had provided his attorney a list of ten witnesses who would have testified as to his character and the fact that Petitioner often worked with checks in his business.

Petitioner alleged that following his conviction and appeal, he was abandoned by his attorney. Petitioner testified that trial counsel had failed to file an application for a Rule 11 appeal and that Petitioner had not heard from trial counsel since his direct appeal. On cross-examination, Petitioner denied having agreed to a bench trial during his representation with his prior trial counsel. Petitioner further denied that he spoke on the phone with trial counsel on multiple occasions.

Trial counsel testified that when he was retained by Petitioner, Petitioner told him he had already requested a bench trial through his prior counsel. Trial counsel also testified that Petitioner did not express any objection to a bench trial on the morning of the trial, and trial counsel did not tell Petitioner that he was being forced to have a bench trial. Trial counsel explained that he received and reviewed a copy of the State's discovery and that the initial meeting with Petitioner lasted more than three minutes. Additionally, trial counsel had numerous phone calls with Petitioner in preparation for trial. Trial counsel testified that the witnesses provided by Petitioner were all character witnesses and would have been improper to call as fact witnesses at trial. Finally, trial counsel did not believe that filing a request for an appeal was a requirement under the law.

On January 14, 2020, the post-conviction court entered an order granting Petitioner a delayed appeal to allow him to file a delayed Rule 11 application for appeal to the supreme court and stayed all further proceedings on the post-conviction matter pending the outcome of that application. Following the denial of that application for permission to appeal, the post-conviction court entered an order on June 16, 2020, denying the petition for post-conviction relief. Petitioner filed a notice of appeal on July 14, 2020.

The post-conviction court's order denying relief addressed numerous issues raised in Petitioner's post-conviction petition. However, in his brief, Petitioner raises only the two issues addressed herein.

- 6 -

# Analysis

On appeal, Petitioner argues that the post-conviction court erred in denying his petition for post-conviction relief because his trial counsel was ineffective when he failed to preserve Petitioner's right to a trial by jury and failed to adequately communicate with Petitioner to prepare for trial. The State responds that Petitioner failed to show that his trial counsel was ineffective, and thus the post-conviction court properly denied relief. We agree with the State.

The right to effective assistance of counsel is safeguarded by the Constitutions of both the United States and the State of Tennessee. U.S. Const. amend. VI; Tenn. Const. art. I, § 9. When a claim of ineffective assistance of counsel is made, the burden is on the petitioner to show (1) that counsel's performance was deficient and (2) that the deficiency was prejudicial. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *see Lockhart v. Fretwell*, 506 U.S. 364, 368-72 (1993). Failure to satisfy either prong results in the denial of relief. *Strickland*, 466 U.S. at 697. Accordingly, if we determine that either factor is not satisfied, there is no need to consider the other factor. *Finch v. State*, 226 S.W.3d 307, 316 (Tenn. 2007) (citing *Carpenter v. State*, 126 S.W.3d 879, 886 (Tenn. 2004)). The deficient performance prong of the test is satisfied by showing that "counsel's acts or omissions were so serious as to fall below an objective standard of reasonableness under prevailing professional norms." *Goad v. State*, 938 S.W.2d 363, 369 (Tenn. 1996) (citing *Strickland*, 466 U.S. at 688; *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975)). The factual findings of the post-conviction court are binding on an appellate court unless the evidence in the record preponderates against those findings. *Dellinger v. State*, 279 S.W.3d 282, 294 (Tenn. 2009).

Petitioner claims his trial counsel was deficient in failing to preserve his right to a trial by a jury. "The right to a jury trial in both civil and criminal cases is a foundational right protected by both the federal and state constitutions." *State v. Smith*, 418 S.W. 3d 38, 44 (Tenn. 2013). While the right to a jury trial in a criminal case is inviolate, the right may, nonetheless, be waived. *State v. Ellis*, 953 S.W. 2d 216, 220 (Tenn. Crim. App. 1997). At common law, a defendant had no right to waive a jury trial. However, our supreme court has held that nothing in either the state or federal constitutions prohibits the legislature from conferring such a right under appropriate safeguards. See *State v. Durso*, 645 S.W. 2d 753, 758 (Tenn. 1983) (citing *Seale v. Luttrell*, 428 S.W.2d 312 (Tenn. 1968)). Accordingly, Tennessee Rule of Criminal Procedure 23 provides that a defendant may "waive a jury trial at any time before the jury is sworn" as long as the waiver is (1) in writing, (2) consented to by the district attorney general, and (3) approved by the court. Tenn. R. Crim. P. 23(b).

In the absence of a Rule 23 written waiver, waiver may also be found when the record "clearly show[s] a voluntary relinquishment of the rights to be tried by a common law jury." *State v. Bobo*, 814, S.W.2d 353, 359 (Tenn. 1991). To show voluntary relinquishment, a defendant must "be advised by the court of his or her right to a jury trial" and must "*personally* waive the right in open court for the record." *Ellis*, 953 S.W.2d at 221-22 (emphasis in original). Waiver cannot be found in a "silent record" and counsel may not waive the right for a client. *Id* at 221. However, failure to sign a written waiver does not "preclude the court from examining the facts to determine if a [Petitioner] had, in fact, waived his right to a jury trial." *State v. Dunn*, 453 S.W.2d 777, 779 (1970).

Petitioner argues that trial counsel's representation was deficient because trial counsel failed to preserve Petitioner's right to a jury trial. Petitioner contends that he never signed a Rule 23 written waiver of his right to a trial by jury. He contends that he told trial counsel he objected to a bench trial and that he objected to a bench trial on the record prior to trial. Petitioner further contends that on the day of his bench trial he expected to attend a hearing, not a trial, and that the trial was therefore a surprise to him. Petitioner's testimony at the post-conviction hearing is in conflict with trial counsel's testimony. Trial counsel testified that Petitioner did not object to a bench trial.

While the record does not contain a written waiver signed by Petitioner, the post-conviction court in examining the record credited trial counsel's testimony over Petitioner's testimony finding that:

> [W]hile neither party was able to locate the Petitioner's written waiver entered pursuant to Tennessee Rule of Criminal Procedure 23, the Court's minutes from the date of the trial reflect that a Rule 23 waiver was entered before the trial, and the Court of Criminal Appeals notes in their opinion that a Rule 23 written waiver was entered. See *State v. Bumpas*, No. M2017-007460CCA0R30CD02018 WL 817289 at *1 (Tenn. Crim. App. Feb. 12, 2018). Accordingly, the Court does not find the Petitioner to be credible on this issue. Rather the Court accredits [trial counsel's] testimony that the decision to have a bench trial was made by the Petitioner and the Court finds that the Petitioner waived his right to a jury trial knowingly and voluntarily.

The post-conviction court found no deficiency by trial counsel. The record supports the post-convictions court's finding that Petitioner knowingly and voluntarily waived his right to a jury trial. Petitioner is not entitled to relief on this issue.

Petitioner further argues that his trial counsel was ineffective for failure to adequately communicate with Petitioner to prepare for trial and for missing court dates prior to Petitioner's bench trial. At the post-conviction hearing, Petitioner testified that his

initial meeting with his trial counsel lasted three minutes, that trial counsel refused to return phone calls, and that trial counsel never reviewed the State's case with Petitioner. Petitioner testified that because Petitioner was unaware that he was to be tried on the day of his bench trial, he was unable to call witnesses in his defense. Trial counsel testified that the initial meeting lasted more than three minutes and that he had numerous phone conversations with Petitioner in preparation for trial. Trial counsel also testified that he had reviewed the State's discovery, as well as Petitioner's proposed list of witnesses. All of the witnesses were character witnesses who could not testify regarding any of the facts of the case.

The post-conviction court did not find Petitioner to be a credible witness, and specifically accredited the testimony of trial counsel regarding his communications with Petitioner and preparation for trial. Further, the post-conviction court found that trial counsel's communications with Petitioner and his trial preparation were "well within the bounds of competent representation." Appellate courts must generally defer to a post-conviction court's findings concerning witness credibility, the weight and value of witness testimony, and the resolution of factual issues presented by the evidence. *Kendrick v State,* 454 S.W.3d 450, 457 (Tenn. 2015). Petitioner has failed to show that the post-conviction court erred in determining that he was not entitled to relief on his ineffective assistance of counsel claims.

## Conclusion

For the foregoing reasons, the judgment of the post-conviction court is affirmed.

_____
JILL BARTEE AYERS, JUDGE