IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
August 13, 2025 Session

**STATE OF TENNESSEE v. DAVID JAMES PAUL**

**Appeal from the Circuit Court for Williamson County**
**No. W-CR230150   Joseph A. Woodruff, Judge**
_____

**No. M2025-00338-CCA-R3-CD**
_____

Following a bench trial, the Defendant, David James Paul, was convicted of two counts of driving under the influence.  The trial court merged the convictions and imposed a sentence of eleven months and twenty-nine days.  On appeal, the Defendant challenges the trial court's denial of his pretrial motion to suppress.  He contends that the State failed to establish reasonable suspicion for the initial seizure because the officers who detained him did not testify, leaving the record without proof of the circumstances justifying the stop. The State responds that reasonable suspicion was established through a "be on the lookout" dispatch report, or BOLO, and the testimony of the arresting officer, who arrived after the Defendant had been detained.  Upon our review, we hold that because the State offered no admissible evidence concerning the circumstances of the initial seizure, it fell short of establishing that the detention was supported by reasonable suspicion of criminal conduct. Accordingly, we respectfully reverse and vacate the judgments of the trial court and remand for dismissal.

**Tenn. R. App. P. 3 Appeal as of Right;**
**Judgments of the Circuit Court Reversed**

TOM GREENHOLTZ, J., delivered the opinion of the court, in which J. ROSS DYER and JILL BARTEE AYERS, JJ., joined.

Jonathan W. Turner, Franklin, Tennessee, for the appellant, David James Paul.

Jonathan Skrmetti, Attorney General and Reporter; Benjamin A. Ball, Senior Assistant Attorney General, and Caroline Weldon, Assistant Attorney General; Stacey B. Edmonson, District Attorney General; and Dale L. Evans and Ashley M. Abraham, Assistant District Attorneys General, for the appellee, State of Tennessee.

# OPINION

## FACTUAL BACKGROUND

### A.    THE DEFENDANT'S SEIZURE

On the evening of July 3, 2022, Officer Jared Anderson of the Franklin Police Department received a BOLO, or a police dispatch to "be on the lookout," for a particular vehicle. Within minutes of the dispatch, he was radioed by his partner, who told him that the suspected vehicle had been spotted at a restaurant in the area. Officer Anderson arrived after the Defendant had been detained, finding him seated on the driver's side of the vehicle and engaged in conversation with other officers.

The initial officers on scene communicated to Officer Anderson that the Defendant exhibited signs of possible impairment, and Officer Anderson took over the investigation in his role as a DUI task force officer. Officer Anderson approached the Defendant, who was still seated in the driver's seat with the vehicle running. He asked the Defendant to step out of the vehicle and accompany him to the adjoining parking lot. During their exchange, the Defendant admitted to having multiple alcoholic beverages before driving his vehicle. Officer Anderson requested that the Defendant submit to field sobriety testing, and the Defendant declined. Officer Anderson then placed the Defendant under arrest for suspected driving under the influence of an intoxicant.

### B.    SUPPRESSION HEARING

In March of 2023, a Williamson County grand jury charged the Defendant with driving under the influence of an intoxicant, among other offenses. *See* Tenn. Code Ann. § 55-10-401. Before trial, the Defendant filed a motion to suppress all evidence arising from the stop, seizure, and subsequent investigation. He argued that the officers who initiated the stop did so without reasonable suspicion of criminal conduct and that his arrest and vehicle search were unlawful.

In its written response to the motion, the State argued that reasonable suspicion had been established by a citizen complainant, who had described the Defendant's vehicle, his license plate, the manner of the suspected impaired driving, and the location and direction of travel just before officers initiated a traffic stop. In addition, the State alleged that those facts were made known to law enforcement via the BOLO from dispatch, and that,

therefore, a brief investigatory detention of the Defendant was supported by reasonable suspicion of criminal conduct.

At the suppression hearing, the State presented a single witness, Officer Anderson. He testified that the BOLO "told all officers over the radio the description of the vehicle as described by the caller, the direction of travel, and that the caller believed that somebody may be driving drunk." The Defendant objected to this testimony as hearsay, and the trial court sustained the objection, admitting the statement only to explain the steps of Officer Anderson's investigation. Officer Anderson said that he then received a radio call from his partner reporting that the vehicle had been located. The Defendant again objected, and the court once more limited the testimony to a non-hearsay purpose, receiving it only for a non-hearsay purpose and not as substantive proof of the facts asserted.

Officer Anderson testified that when he arrived on scene, the Defendant remained in the vehicle while speaking with other officers. As the officer began to recount what those officers had told him about their observations, the Defendant raised a third hearsay objection. The court sustained the objection and again restricted the testimony to a non-hearsay purpose. Officer Anderson then described his own direct interaction with the Defendant, including the events that led to the Defendant's arrest.

At the conclusion of the suppression hearing, the trial court denied the Defendant's motion to suppress. It found that the information received by Officer Anderson through the BOLO, combined with his relatively short response time to the scene, was sufficient to establish reasonable suspicion for the investigatory stop of the Defendant.

## C.    TRIAL AND APPEAL

After the motion to suppress was denied, the parties held a bench trial with stipulated facts, and the trial court found the Defendant guilty of driving under the influence.[1] The

---

[1]     The Defendant was indicted for driving under the influence of an intoxicant ("DUI by intoxication") and for driving under the influence with a blood alcohol concentration of 0.08 percent or greater ("DUI per se"). Following the bench trial, the trial court found the Defendant guilty under both theories and properly merged the convictions. *See State v. Cooper*, 336 S.W.3d 522, 524 (Tenn. 2011). The State dismissed the remaining counts of the indictment before trial.

Before proceeding with the bench trial, the trial court conducted a colloquy with the Defendant concerning his waiver of the right to a jury trial, and the Defendant personally waived that right on the record. The parties nevertheless maintained that a written waiver was unnecessary. Respectfully, that belief was incorrect. *See* Tenn. R. Crim. P. 23(b)(2)(A). Nevertheless, no party raises the absence of a written

court sentenced the Defendant to a term of eleven months and twenty-nine days, which it suspended after service of forty-eight hours in custody.

Following the verdict, the Defendant filed a timely motion for a new trial, arguing that the trial court improperly denied his motion to suppress. The trial court denied that motion on January 31, 2025, and the Defendant filed a timely notice of appeal twenty days later. *See* Tenn. R. App. P. 4(a).

## STANDARD OF APPELLATE REVIEW

Our supreme court has recognized that "the first question for a reviewing court on any issue is 'what is the appropriate standard of review?'" *State v. Enix*, 653 S.W.3d 692, 698 (Tenn. 2022). The sole issue in this appeal is whether the trial court properly denied the Defendant's motion to suppress evidence.

In reviewing a trial court's ruling on a motion to suppress, appellate courts apply a bifurcated standard. We defer to the trial court's findings of fact unless the evidence preponderates against them. *State v. Stanfield*, 554 S.W.3d 1, 8 (Tenn. 2018). The prevailing party in the trial court is entitled to the strongest legitimate view of the evidence and to all reasonable inferences that may be drawn from it. *State v. Odom*, 928 S.W.2d 18, 23 (Tenn. 1996). In making this assessment, we may consider the evidence presented both at the suppression hearing and at trial. *State v. Henning*, 975 S.W.2d 290, 299 (Tenn. 1998). Despite this deference to factual findings, however, we review the trial court's application of law to the facts de novo, affording no presumption of correctness. *State v. Henry*, 539 S.W.3d 223, 232 (Tenn. Crim. App. 2017) (citing *State v. Montgomery*, 462 S.W.3d 482, 486 (Tenn. 2015)).

## ANALYSIS

In this appeal, the Defendant argues that the State failed to establish reasonable suspicion for the initial seizure because the officers who detained him did not testify, leaving the record without proof of the circumstances justifying the seizure. Specifically, he argues that Officer Anderson did not conduct the traffic stop and had no personal knowledge of the facts and circumstances giving rise to the Defendant's seizure. For its part, the State acknowledges that it has the burden of proving that either the citizen

---

waiver on appeal, and in light of our disposition herein, we do not address the issue further. *See State v. Ellis*, 953 S.W.2d 216, 221 (Tenn. Crim. App. 1997) (discussing written waiver requirement).

- 4 -

complainant or the 911 dispatcher had reasonable suspicion, supported by specific and articulable facts, that a criminal offense had been or was about to be committed. However, it focuses on Officer Anderson's independent corroboration of the vehicle's identity provided by the BOLO when arguing that there was sufficient evidence to establish reasonable suspicion. We agree with the Defendant.

## A. PROTECTIONS AGAINST UNREASONABLE SEARCHES AND SEIZURES

The Fourth Amendment to the United States Constitution guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures[.]" Likewise, Article I, section 7 of the Tennessee Constitution ensures that "the people shall be secure in their persons, houses, papers and possessions, from unreasonable searches and seizures[.]" Our supreme court has held that Article I, section 7 is "identical in intent and purpose to the Fourth Amendment." *State v. Tuttle*, 515 S.W.3d 282, 307 (Tenn. 2017).

These constitutional provisions are designed "to safeguard the privacy and security of individuals against arbitrary invasions by governmental officials." *Carpenter v. United States*, 585 U.S. 296, 303 (2018) (citation omitted); *Stanfield*, 554 S.W.3d at 8. Because "a warrant is normally required when a police officer intrudes upon the privacy of a citizen," warrantless searches and seizures, as here, are presumptively unreasonable, and any evidence obtained as a result of a warrantless action is subject to suppression. *State v. Garcia*, 123 S.W.3d 335, 343 (Tenn. 2003). However, if the State "demonstrates that the search or seizure was conducted pursuant to one of the narrowly defined exceptions to the warrant requirement," then the evidence will not be suppressed. *State v. Williamson*, 368 S.W.3d 468, 474 (Tenn. 2012).

### 1. Reasonable Suspicion and Investigative Stops

One well-recognized exception to the warrant requirement exists "when a law enforcement officer makes an investigatory stop based upon reasonable suspicion, supported by specific and articulable facts, that a criminal offense has been or is about to be committed." *State v. Davis*, 354 S.W.3d 718, 727 (Tenn. 2011) (citation and internal quotation marks omitted). These specific and articulable facts must be judged by an objective standard, not the subjective beliefs of the officer making the investigative seizure. *State v. Norword*, 938 S.W.2d 23, 25 (Tenn. Crim. App. 1996). Indeed, the officer must be able "to articulate something more than an inchoate and unparticularized suspicion or

hunch." *State v. Yeargan*, 958 S.W.2d 626, 632 (Tenn. 1997). "The Fourth Amendment requires some minimal level of objective justification" to support the seizure. *Id.*

These principles guide how courts assess whether reasonable suspicion exists in a particular case. The evaluation must be based on the totality of the circumstances. *State v. Day*, 263 S.W.3d 891 (Tenn. 2008). An officer may rely on objective facts personally known or observed during an investigation, as well as information received from other officers or agencies, knowledge of offenders' patterns of operation, or information from informants. *Davis*, 354 S.W.3d at 727. In reviewing whether reasonable suspicion existed, a court must also consider the "rational inferences and deductions that a trained police officer may draw from the facts and circumstances known to [him or her]." *Id.* at 728 (citation and internal quotation marks omitted).

Consistent with these principles, a BOLO may provide an officer with the reasonable suspicion necessary to justify an investigatory stop. *State v. Theus*, No. W2016-01626-CCA-R3-CD, 2017 WL 2972231, at *6 (Tenn. Crim. App. July 12, 2017), *perm. app. denied* (Tenn. Nov. 17, 2017). To rely on a BOLO, however, the State must prove that its source had a reasonable suspicion of criminal activity supported by specific and articulable facts. *State v. Moore*, 775 S.W.2d 372, 376 (Tenn. Crim. App. 1989); *State v. Moore*, No. E2019-01270-CCA-R3-CD, 2020 WL 4941978, at *5 (Tenn. Crim. App. Aug. 25, 2020), *no perm. app. filed*.

The officer who relies on a dispatch need not have personal knowledge of the information it contains. The State must nevertheless establish, by a preponderance of the evidence, that the complainant, dispatcher, or initiating officer possessed the requisite suspicion. *Moore*, 775 S.W.2d at 378; *State v. Van Camp*, No. E2014-00667-CCA-R3-CD, 2014 WL 7399671, at *4 (Tenn. Crim. App. Dec. 29, 2014), *no perm. app. filed*. This showing may be made by presenting testimony from the individuals who directly observed the conduct later relayed in the BOLO. The dispatcher need not testify, because he or she "simply serve[s] as a conduit in relaying the information" to the investigating officer. *Moore*, 775 S.W.2d at 378. Without proof that the source of the BOLO possessed reasonable suspicion of criminal activity supported by specific and articulable facts, a BOLO cannot supply a constitutional basis for a seizure. *State v. Russell*, No. E2006-00410-CCA-R3-CD, 2007 WL 1559247, at *2 (Tenn. Crim. App. May 31, 2007), *no perm. app. filed*.

## 2.    Absence of Specific and Articulable Facts in this Record

Applying these principles to this case, we conclude that the State failed, in four ways, to meet its burden to show that the Defendant's initial seizure was supported by reasonable suspicion.  First, the State relied on limited witness proof.  At the suppression hearing, the State only presented Officer Anderson.  The officers who first stopped and detained the Defendant did not testify.  Because Officer Anderson arrived after the Defendant had already been detained, he had no personal knowledge of the facts that prompted the seizure and, therefore, could not testify to the circumstances that might have justified it.

Second, the substantive value of Officer Anderson's testimony was restricted by sustained objections by the trial court.  Each time the officer attempted to recount the contents of the dispatch, his partner's radio call, or the observations of other officers, the Defendant objected to hearsay.  The trial court sustained each objection and admitted the testimony only to explain the officer's investigative steps, not for the truth of the matters asserted.  The State accepted those rulings in the trial court and does not contest them on appeal.  Accordingly, because the BOLO information and other officers' observations are not part of the substantive evidentiary record, this evidence cannot support the trial court's findings.

Third, the record contains no evidence from the sources of the BOLO.  The citizen complainant who made the 911 call did not testify.  The dispatcher who issued the BOLO did not testify.  Without testimony from any of these individuals, the State failed to introduce evidence of the specific conduct that might have justified the seizure.

Finally, the only admissible evidence in the case relates to Officer Anderson's interaction with the Defendant *after* the seizure had already occurred.  The officer testified that the Defendant was seated on the driver's side of the vehicle with the engine running, that he admitted to drinking multiple alcoholic beverages, that he declined to perform field sobriety tests, and that Officer Anderson then arrested him.  These facts may support probable cause for the arrest itself, but they cannot retroactively justify the earlier seizure by other officers.  Taken together, these deficiencies confirm that the record lacks admissible evidence of reasonable suspicion—grounded in specific and articulable facts— to justify the Defendant's initial seizure.

Pushing against this conclusion, the State contends that the stop was justified under *State v. Hanning*, 296 S.W.3d 44 (Tenn. 2009).  In *Hanning*, an officer received a BOLO

describing a black eighteen-wheeler driving recklessly in the vicinity. *Id.* at 46. Acting on that information, the officer quickly located the truck, initiated the stop, and ultimately arrested the driver. *Id.* at 46-47. Although neither the informant nor the dispatcher testified at the suppression hearing, the Tennessee Supreme Court upheld the stop, emphasizing both the seriousness of the reported conduct and the officer's prompt corroboration of the caller's details. *Id.* at 54.

This case is materially different from *Hanning*. Officer Anderson did not conduct the stop; he arrived only after the Defendant had already been detained. As a result, he lacked personal knowledge of the circumstances that prompted the seizure and could not testify to its justification. Moreover, the BOLO and related communications were admitted only for limited purposes due to sustained hearsay objections and, therefore, cannot support a finding of reasonable suspicion. Even if that information were admissible, the record contains no evidence that the officers who seized the Defendant heard the BOLO, relied on it in making the stop, or corroborated its contents.

In short, *Hanning* does not relieve the State of its evidentiary burden to show that the officers who seized the Defendant acted on reasonable suspicion of criminal activity supported by specific and articulable facts. Here, the record contains no testimony from the officers who detained the Defendant, no evidence from the dispatcher or the informant, and no exhibits reflecting the 911 report. Once Officer Anderson's testimony was confined to the narrow purposes the trial court permitted, no admissible evidence remained to show what the seizing officers were told, what they observed, or whether those observations contained specific and articulable facts giving rise to reasonable suspicion of criminal conduct. Absent that foundation, the totality of the circumstances fails to demonstrate that the initial seizure satisfied constitutional requirements.

### B.    IMPORTANCE OF BUILDING THE RECORD FOR APPEAL

This appeal illustrates a basic yet essential rule: a party must build its record in the trial court. That rule is not merely a "best practice" for trial advocacy; it is a legal necessity for appellate practice. As our supreme court has observed, "what is in the record sets the boundaries for what the appellate courts may review, and thus only evidence contained therein can be considered." *State v. Bobadilla*, 181 S.W.3d 641, 643 (Tenn. 2005). Put more directly, "if a fact is not in the appellate record, it did not happen." *State v. Hamilton*, No. W2023-01127-CCA-R3-CD, 2024 WL 4130757, at *3 (Tenn. Crim. App. Sept. 10, 2024), *perm. app. denied* (Tenn. Feb. 20, 2025).

This record shows why that principle matters.  From our review, it seems likely that the participants in the courtroom "knew" what happened during the Defendant's seizure on that July night.  Indeed, the State's pre-hearing brief outlined facts that, if supported by proof, might have justified the Defendant's seizure.  But "knowing" is not proving, and briefing is not evidence.  When it came time to build the record, the necessary proof was simply not offered.  We respectfully reverse.

## CONCLUSION

In summary, we hold that the State failed to prove facts showing that the Defendant's initial seizure was supported by reasonable suspicion of criminal conduct.  Accordingly, because all of the evidence admitted at trial was obtained in violation of the Fourth Amendment, we respectfully reverse and vacate the judgments of the trial court and remand for dismissal of the indictment.

s/ *Tom Greenholtz*
TOM GREENHOLTZ, JUDGE