IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
March 24, 2021 Session

## JARUS SMITH v. STATE OF TENNESSEE

**Appeal from the Circuit Court for Hickman County**
**No. 16-CV-66     James G. Martin III,  Judge**

_____

### No. M2020-00816-CCA-R3-PC

_____

The Petitioner, Jarus Smith, appeals as of right from the Hickman County Circuit Court's denial of his petition for post-conviction relief, wherein he challenged his convictions for facilitation of attempted second degree murder, possession of contraband in a penal institution, and two counts of aggravated assault. On appeal, the Petitioner asserts that (1) he did not knowingly and intelligently waive his constitutional right to a twelve-person jury, and (2) he received the ineffective assistance of trial counsel relative to counsel's advice about proceeding with an eleven-person jury. Following our review, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

D. KELLY THOMAS, JR., J., delivered the opinion of the court, in which NORMA MCGEE OGLE and ROBERT H. MONTGOMERY, JR., JJ., joined.

Matthew J. Crigger (on appeal), Brentwood, Tennessee; and Richard C. Strong (at post-conviction hearing), Nashville, Tennessee, for the appellant, Jarus Smith.

Herbert H. Slatery III, Attorney General and Reporter; Caitlin Smith, Senior Assistant Attorney General; Kim R. Helper, District Attorney General; and Michael J. Fahey II, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### FACTUAL BACKGROUND

The Petitioner was convicted by a Hickman County jury of facilitation of attempted second degree murder, possession of contraband in a penal institution, and two counts of aggravated assault related to a May 4, 2012 incident of prison unrest in the Turney Center Industrial Complex, during which prison guards Cody Hellam and Paula Miller were

stabbed and beaten.[1]   State v. Jarus Smith, No. M2014-01130-CCA-R3-CD, 2015 WL 4656553, at *1-3 (Tenn. Crim. App. Aug. 6, 2015), perm. app. denied (Tenn. Dec. 10, 2015).  The Petitioner received an effective sentence of thirty years' incarceration.

The Petitioner was represented by two attorneys at trial, "trial counsel" and "elbow counsel."  At trial, during a lunch break occurring after the alternate juror was excused and the jury retired to deliberate, the trial court called the parties and their attorneys back to court at 1:10 p.m.  The court announced that one of the jurors had "been sick several times" that morning and once after the jury retired; the juror informed the court that he did not feel capable of continuing to serve on the jury.

The trial court noted that the alternate juror was still in the building and had been asked to sit in the trial court's office.  The alternate juror reported having spoken to one of the victims, Paula Miller, in the courthouse and telling her "that he hoped she got to feeling better[.]"  The court opined that the sick juror appeared to be contagious and that the court would excuse him "unless there[ was] a strenuous objection."  The court stated that deliberations could proceed with eleven jurors or with the alternate juror, and it offered to call the alternate juror to the stand for questioning about his ability to be fair and impartial. At this juncture, it was apparent that one of co-defendant Frazier's attorneys, "Mr. Bates, III," was attempting to reach his colleague, named "Mr. Bates, IV," by telephone to discuss this issue, and the court declared an in-court recess of unknown duration.

When the parties and their counsel reconvened, the State said that it had no objection to the alternate juror.  Mr. Bates, III, stated, "We are not.  We would ask for [eleven]. We're not asking for a mistrial; we're asking for [eleven]."  The trial court then offered to call the sick juror to the stand for questioning, although the court noted that he "[did not] look well."  Trial counsel objected to the alternate juror, and elbow counsel indicated his agreement.  Elbow counsel asked the court for an opportunity to speak to the Petitioner privately about proceeding with eleven jurors.  The following exchange occurred:

THE COURT:  Well, we'll go forward with [the sick juror] before I'll agree to – if you're going to ask for a mistrial or something like that.

[ELBOW COUNSEL]:  No, we're good.

THE COURT:  I'll force [the sick juror] to get better.  (Laughter.)

---

[1] The Petitioner was tried jointly with fellow inmates Adam Dansby Frazier and Javoris Sparkman.  The only issues raised in this appeal relate to events occurring after the jury retired to deliberate.  As a result, we will forgo a detailed summary of the evidence presented at trial.

Mr. Hinson [co-defendant Sparkman's counsel], as it relates to [the alternate juror], are you objecting to him?

MR. HINSON: Based upon what I've heard, I would, and I certainly don't want to force a sick man to be here.

The trial court stated that it "would give [the sick juror] some time to try to get to feeling better and then keep him, as opposed to—[.]" Mr. Hinson expressed concern that this might "force the jurors to try to rush this up" and stated that he was "fine with eleven." The court addressed co-defendant Sparkman and asked if he was "okay with that"; co-defendant Sparkman replied negatively. The court asked for him to elaborate, and co-defendant Sparkman said, "Really, I [would] rather for you to see if the guy who got sick want[ed] to be on there first. If he [does not] want to be on there, then we'll accept [eleven]."

The trial court addressed the Petitioner and asked if he was amenable to eleven jurors. The Petitioner replied by asking for his available options. The court responded, "To have [the sick juror] serve." The Petitioner said, "I wouldn't want him to be [on the jury] if he [was not] able to give his full potential to—[.]" The trial court asked the court deputy to bring in the sick juror.

The trial court asked co-defendant Frazier if he objected to eleven jurors. Co-defendant Frazier stated, "No, I was just waiting on—[.]" Mr. Hinson interjected and said that co-defendant Sparkman had changed his mind. The court asked co-defendant Sparkman if he would be satisfied with eleven jurors, and he responded affirmatively. Co-defendant Sparkman added that the sick juror "wouldn't be clear," so he would rather have the eleven jurors who had heard the proof. The court asked if anyone was forcing co-defendant Sparkman to "do this," and he replied negatively. The following exchange occurred:

THE COURT: Okay.

How about you, [the Petitioner], do you agree or are you okay with [an eleven]-person jury?

[THE PETITIONER]: Yes, Sir.

THE COURT: Is anybody forcing you to do this, Sir?

THE PETITIONER: No, Sir.

The trial court asked co-defendant Frazier to repeat his assent to proceeding with eleven jurors, and Mr. Bates, III, answered for him. The court asked co-defendant Sparkman and the Petitioner again if they had been "forced into this in any way," and both answered negatively. The court also asked both of them to confirm that this was "freely and voluntarily" their decisions, and both of them answered affirmatively. The jury-out hearing concluded at 1:22 p.m.

Trial counsel also represented the Petitioner in the direct appeal. In his direct appeal, the Petitioner raised as issues the sufficiency of the evidence, whether a mistrial should have been granted after victim Paula Miller's hearsay statements were admitted, whether a motion for a continuance should have been granted, whether a superseding indictment should have been dismissed, and whether the trial court erred by enhancing the Petitioner's sentence. Smith, 2015 WL 4656553, at *4. This court affirmed the judgments of the trial court. Id. at *20.

On December 8, 2016, the Petitioner, through post-conviction counsel, filed a petition for post-conviction relief raising multiple grounds of ineffective assistance of trial and appellate counsel. In relevant part, the Petitioner argued that trial counsel and elbow counsel rendered ineffective assistance when they failed to inform the Petitioner of his constitutional right to a twelve-person jury before the Petitioner consented to an eleven-person jury. In a related issue, the Petitioner contended that his due process rights had been violated by entering an unknowing waiver of his right to a twelve-person jury.

### a. First evidentiary hearing[2]

At the first post-conviction hearing on August 28, 2017, the Petitioner testified that trial counsel was appointed at the arraignment and that the case was pending for about one year before the trial in circuit court. According to the Petitioner, he met with trial counsel five or six times at the courthouse. Trial counsel eventually filed a pretrial motion to continue; the Petitioner stated that he and trial counsel "had a talk" and that trial counsel knew that the Petitioner was trying to retain another attorney. At the motion hearing, trial counsel requested that the trial court grant a continuance in order for the Petitioner to retain another attorney. The Petitioner averred that trial counsel told the judge that "he wasn't prepared to defend [the Petitioner]" due to inexperience and the severity of the sentence the Petitioner was facing. The trial court denied the motion but appointed elbow counsel to assist trial counsel. The Petitioner met with elbow counsel for fifteen minutes on the day he was appointed and a second time on the first day of jury selection.

---

[2] We have omitted from this summary a quantity of post-conviction testimony not relevant to the issues on appeal.

The Petitioner testified that trial counsel continued to represent him on direct appeal and that this court's opinion indicated that the issue of whether the trial court properly denied the motion to continue was waived for lack of an adequate record. When asked whether he wanted any additional issues raised on direct appeal, the Petitioner responded affirmatively and asserted that he wanted to raise his not having been granted a severance and an issue related to his not having had a weapon during the incident.

Relative to jury deliberations, the Petitioner recalled the trial court's dismissing the alternate juror and a juror's falling ill. The Petitioner did not remember whether the juror became ill before or after the alternate was excused. He agreed that the trial court asked the parties to agree to proceed with eleven jurors. According to the Petitioner, he asked trial counsel what other options they had, and trial counsel responded that no other options existed. The Petitioner stated, "I don't . . . know the law, but I do know we [were] supposed to have a [twelve]-person jury." The Petitioner said that after discussing the issue with trial counsel, he felt "like [he] was forced to go ahead . . . with the [eleven]." The Petitioner averred that the trial court and trial counsel never informed him that he had a constitutional right to a twelve-person jury. The Petitioner said that he did not feel able to ask the trial court for a twelve-person jury. The Petitioner stated that he did not understand that trial counsel could have "asserted [the Petitioner's] constitutional rights" if the Petitioner had so requested. The Petitioner affirmed that he "didn't actually know [he] had a constitutional right to stand firm and tell [the trial court] that [he] wanted" twelve jurors. The Petitioner stated that after trial counsel told him no other options existed, the Petitioner agreed to go forward with the eleven-person jury because he felt he "had to proceed as it was."

At this juncture, the State noted that it intended to utilize the trial exhibits to cross-examine the Petitioner. Although the State had seen the exhibits, which had been included in the direct appeal record sent to the post-conviction court, they were not with the post-conviction record; it was later determined that the exhibits had been moved to the record of one of the co-defendants' appeals to this court. The post-conviction court continued the hearing in order to facilitate retrieval of the exhibits.

### b. Second evidentiary hearing

At the second evidentiary hearing on September 25, 2017, the post-conviction court received the trial transcript and exhibits as a collective exhibit to the post-conviction hearing. On cross-examination, the Petitioner testified that he did not understand that he had a right to a twelve-person jury. He elaborated, "I understood I had a right to a jury, but not [an eleven-person] jury. I thought it was supposed to [have] been a [twelve]-person jury, right." The prosecutor responded, "Okay. So you understood you had a right to a [twelve]-person jury?" The Petitioner answered affirmatively.

The Petitioner affirmed that he had pled guilty or no contest in multiple previous cases. When asked whether on those occasions the judge had explained to the Petitioner his right to a jury trial, the Petitioner responded that he did not "really recall." The Petitioner stated that in a previous case, he had retained an attorney; the Petitioner averred that the attorney did not explain "specifics about" his right to a jury and only explained that they had to sign paperwork. The Petitioner reiterated that he did not "really know all the specifics that c[a]me along with a jury trial."

The Petitioner acknowledged his having pled guilty in June 2010 to the sale of cocaine in a drug free zone. When asked whether the judge and the Petitioner's attorney explained his right to a unanimous jury verdict and a twelve-person jury, the Petitioner stated that he did not recall "all the things that happened" in court at the plea hearing and only remembered signing the plea agreement and going to prison. The Petitioner also acknowledged that he pled guilty in March 2003 to possession of Xanax for resale.

After post-conviction counsel raised an objection regarding the factual basis of the State's asking whether the Petitioner was advised of his right to a twelve-person jury during the guilty plea colloquy, the post-conviction court took judicial notice of the questions typically asked by the trial court during a plea colloquy. The post-conviction court noted that it had performed such colloquies "thousands" of times and that it did not recall ever advising a defendant of the right to a twelve-person jury. The court found that the State's possessing a judgment form did not provide sufficient factual basis to question the Petitioner about whether he was specifically advised about being entitled to a twelve-person jury.

The Petitioner testified that at the time of his trial in this case,

We really didn't go into detail about the specifics about the jury. Just common sense I knew a little bit about it's supposed to be [a twelve-]person jury or whatever like that, but I never knew the specifics of the jury as far as the alternates or anything of that nature. I [did not] know [any]thing about that.

The Petitioner recalled the trial court's stating that one of the jurors became ill, although he denied that the trial court presented him with any options for how to proceed. The Petitioner stated that he spoke only to trial counsel about the sick juror and that he did not speak to elbow counsel. He later said, though, that he did not remember whether he discussed the matter with elbow counsel.

Upon examination by the post-conviction court, the Petitioner testified that to his recollection, the trial court only informed him that a juror had fallen ill and did not say

anything more about the "composition of the jury." On redirect examination, the Petitioner reiterated that no one told him about his right to a twelve-person jury. He stated that he asked trial counsel about what other options he had and that trial counsel said they had no other option than to proceed with eleven jurors.

Elbow counsel testified that after graduating from law school, he worked as an assistant district attorney from 1992 until 2011, when he was appointed as a Circuit Court judge. In 2012, he left the bench to enter private practice in criminal and family law. Elbow counsel recalled that the trial court asked him to assist trial counsel with the jury trial portion of the Petitioner's case. Relative to the sick juror, elbow counsel stated that after the jury had retired to deliberate, the trial court announced that one of the jurors had fallen ill. The trial court "thought about calling one of the alternates who had left," but "[e]veryone" objected to the alternate's returning because the alternate conversed with one of the victims, Paula Miller, in the courthouse as the alternate was leaving. Elbow counsel stated that the trial court presented as options that they could proceed with eleven jurors or wait a while and see if the sick juror recovered. Elbow counsel noted that "it may have been intimated to [the trial court] that a mistrial was going to be requested" and that the trial court made clear that it would not grant a mistrial. Elbow counsel stated that he and trial counsel thought they "had a good jury, favorable jury to [the Petitioner]" and that all of the co-defendants agreed to proceed with eleven jurors.

Elbow counsel testified that although he did not "have a specific recollection of wording" he used, "there [was] absolutely no question whatsoever that [he] would have told" the Petitioner about his right to twelve jurors. Elbow counsel elaborated, "I'm not going to let any man or any woman go to trial with [eleven] jurors and not tell them that they have an absolute right to [twelve]. I mean that's just fundamental." Elbow counsel reiterated that he would have told the Petitioner that he had a right to twelve jurors and that he would have asked the Petitioner to decide whether they would wait for the sick juror to recover or proceed with the eleven remaining jurors. Elbow counsel stated that he "probably" would have advised the Petitioner to go forward with eleven jurors unless counsel believed the sick juror was "just so far in favor of the defense[.]"

On cross-examination, elbow counsel testified that he did not seek a mistrial after the co-defendants objected to recalling the alternate juror because the trial court "made it clear that a mistrial was not going to take place." Elbow counsel acknowledged that he did not move for a mistrial and that as a result, he could not "appeal that decision." Elbow counsel noted, though, that he believed the trial court would adjourn for as long as necessary for the sick juror to recover and that he did not believe a reason existed to request a mistrial. Elbow counsel repeated that he would have told the Petitioner, "[Y]ou have the absolute right to a [twelve]-person jury, period, which one do you want?" Elbow counsel

continued that "any decent attorney" would advise his client of such and that he "definitely would have said that."

Elbow counsel acknowledged that to his recollection, the trial court "may [have said] something about" having twelve jurors, but counsel did not believe the court informed the co-defendants on the record that they had a constitutional right to twelve jurors. Elbow counsel stated that his conversation with the Petitioner occurred at the counsel table and lasted about two minutes. Elbow counsel agreed that in his opinion, the trial court gave the co-defendants a "free and voluntary" opportunity to waive a twelve-person jury. Elbow counsel stated that although the trial court joked about "call[ing] a sick person," it was "clear to everyone" that the court would wait for the juror to recover. Elbow counsel said that in his experience, the trial court "always in any case [bent] over backwards to make certain that the defense [could] put on everything they [could] possibly put on in a trial[.]" He added that the trial court customarily "gave the defense pretty much what they wanted during trial" and that if it were needed, the court would have waited for two days to reconvene the jury.

Elbow counsel testified that the trial court's pronouncement that it would not grant a mistrial did not dissuade him from making such a motion to preserve the issue for appeal. He again noted that the trial court's willingness to wait until the sick juror had recovered made a mistrial unnecessary.

Trial counsel testified that he had been licensed to practice law since late 2010, that the Petitioner was "just nervous" about his case being trial counsel's first jury trial, and that the trial court appointed elbow counsel in response to the Petitioner's concerns. Trial counsel stated that when the sick juror issue arose, elbow counsel discussed it with the Petitioner for "less than two minutes" while the trial court discussed it with co-defendants' attorneys; trial counsel noted that he "was trying to listen to that and keep up with what was being said." Trial counsel agreed that he wrote the direct appeal brief and that the trial transcript did not reflect that any of the co-defendants were advised of their right to twelve jurors. He also agreed that neither he nor the co-defendants' attorneys moved for a mistrial. Trial counsel noted that "the way it was handled by the [trial court] left [him] with the impression that [he] couldn't appeal it." Trial counsel said that he did not have enough time to discuss with elbow counsel a possible motion for a mistrial. Trial counsel stated that he did not "know that it was ever said [in court that] they had a constitutional right to" twelve jurors.

When asked whether the co-defendants and their attorneys were permitted time to discuss how they wished to proceed, trial counsel responded negatively. He recalled that co-defendant Frazier's first-chair attorney was at lunch when the sick juror issue arose and that the trial court proceeded before the attorney returned to the courthouse. Although co-

defendant Frazier's second-chair attorney was present during the relevant events, trial counsel believed that co-defendant Frazier's first-chair attorney was counsel of record.

Trial counsel testified that he did not think "it was ever said on the record [that the Petitioner] had the right to a [twelve]-person jury." He stated that to his recollection, the Petitioner asked the trial court for his options and the trial court replied, "[Y]ou can . . . go with [eleven], you can go with the alternate or you can go with the sick guy and that's it, and . . . no matter what, I'm not granting a mistrial." Trial counsel agreed that the trial court made its statement about a mistrial before any such motion was made, although he noted that the court "might have cut one of the defense attorneys off who . . . was about to say it[.]"

Trial counsel agreed that in order to effectively waive a constitutional right, the waiver had to be knowing and voluntary. Trial counsel stated that he filed the motion for new trial and represented the Petitioner on direct appeal. He denied researching whether a "trial conducted by [eleven] jurors" was constitutionally valid. Trial counsel stated that he did not think the issue was one that could be raised on appeal. He said that the Petitioner's appeal was the third one he had handled, although it was the first appeal from a jury verdict.

The post-conviction court took the matter under advisement and instructed the parties to file supplemental briefs and obtain a transcript of the post-conviction proceedings. Thereafter, the Petitioner filed a November 9, 2017 motion to be declared indigent for purposes of acquiring the hearing transcripts, which the post-conviction court granted on November 15, 2017. After an unexplained delay, the Petitioner filed an April 16, 2020 post-trial memorandum; the State filed its response on April 29, 2020.

The post-conviction court filed a May 22, 2020 written order denying relief. Relative to the jury issue, the post-conviction court found that the trial court presented the parties with three options: (1) proceeding with eleven jurors, (2) waiting for the ill juror to recover, or (3) using the alternate juror. Trial and elbow counsel opposed recalling the alternate juror due to his brief conversation with Ms. Miller. The post-conviction court found that while the trial court spoke to co-defendant Sparkman's attorney, elbow counsel informed the Petitioner that he had a right to twelve jurors, but advised him to proceed with eleven.

The post-conviction court noted the following events documented in the trial transcript: Co-defendant Frazier did not oppose proceeding with an eleven-person jury. Co-defendant Sparkman initially objected to proceeding with eleven jurors, at which point the Petitioner asked the trial court to restate his options. The trial court responded, "To have [the twelfth juror] serve." The Petitioner began to reply that he would not want the juror to serve if he was not "able to give his full potential to—." Co-defendant Sparkman

interjected and stated that he was satisfied with eleven jurors. The Petitioner also stated that he was "okay" with proceeding with eleven jurors. The trial court asked the Petitioner if anyone was forcing him to go forward with eleven jurors, and the Petitioner responded negatively. The jury acquitted the Petitioner of the attempted first degree murder of Cody Hellam and convicted the Petitioner of the lesser-included offense of facilitation of attempted second degree murder relative to Paula Miller. The Petitioner was convicted as charged of possession of contraband in a penal institution and two counts of aggravated assault.

Relative to the Petitioner's waiver of a twelve-person jury, the post-conviction court found that the Petitioner knowingly and voluntarily waived his rights. The post-conviction court credited elbow counsel's testimony that he informed the Petitioner of the right to twelve jurors and that although elbow counsel did not have a specific recollection of what he said, he was certain that he would not allow a defendant to go to trial with eleven jurors without telling that defendant that he had an "absolute right" to twelve. The post-conviction court found that elbow counsel advised the Petitioner to proceed with eleven jurors because it was a "good jury" favorable to the Petitioner and that he would not have done so if he believed the sick juror would strongly favor the defense. The post-conviction court also credited trial counsel's testimony that he knew elbow counsel had a brief conversation with the Petitioner about the jury issue. The post-conviction court noted that the trial transcript reflected elbow counsel's statement to the trial court that he wanted to talk to the Petitioner about the juror issue. The post-conviction court concluded that the Petitioner knew his right to a twelve-person jury and that he effectively waived his rights and chose to proceed with eleven jurors. Although the post-conviction court's order set forth the applicable precedent for ineffective assistance of counsel, the section of the order discussing the jury issue included precedent relative to waiver of a twelve-person jury, and the order did not specifically address trial and elbow counsel's effectiveness in this regard.

ANALYSIS

On appeal, the Petitioner contends that the post-conviction court erred by denying his post-conviction petition, arguing that he received the ineffective assistance of trial counsel because trial and elbow counsel failed to inform him of his constitutional right to a twelve-person jury. In a related issue, the Petitioner also argues that his waiver of the right to a twelve-person jury was not knowing and intelligent as a result of the failure of the trial court, trial counsel, and elbow counsel to explain his rights in this regard. The Petitioner acknowledged at oral argument that the waiver issue was not raised by trial counsel on direct appeal. However, he argues that because the effectiveness of the waiver depended upon on information trial counsel failed to provide the Petitioner, a conflict of interest existed such that trial counsel could not raise the issue himself.

-10-

The State responds that the post-conviction court credited elbow counsel's testimony that he advised the Petitioner of his rights and that the Petitioner did not receive ineffective assistance. Relative to the effectiveness of the Petitioner's oral waiver of a twelve-person jury, the State argues that the Petitioner has waived this issue for failure to raise it on direct appeal.

Post-conviction relief is available when a "conviction or sentence is void or voidable because of the abridgment of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States." Tenn. Code Ann. § 40-30-103. The burden in a post-conviction proceeding is on the petitioner to prove his allegations of fact supporting his grounds for relief by clear and convincing evidence. Tenn. Code Ann. § 40-30-110(f); see Dellinger v. State, 279 S.W.3d 282, 293-94 (Tenn. 2009). On appeal, we are bound by the trial court's findings of fact unless we conclude that the evidence in the record preponderates against those findings. Fields v. State, 40 S.W.3d 450, 456 (Tenn. 2001). Additionally, "questions concerning the credibility of the witnesses, the weight and value to be given their testimony, and the factual issues raised by the evidence are to be resolved" by the post-conviction court. Id.

## I.

The Petitioner contends that trial and elbow counsel rendered ineffective assistance by failing to advise him of his right to twelve jurors. The State responds that trial counsel and appellate counsel were not deficient in this regard, noting that the post-conviction court credited elbow counsel's testimony that he would have informed the Petitioner of that right.

Criminal defendants are constitutionally guaranteed the right to effective assistance of counsel. Dellinger, 279 S.W.3d at 293 (citing U.S. Const. amend. VI; Cuyler v. Sullivan, 446 U.S. 335, 344 (1980)). When a claim of ineffective assistance of counsel is made under the Sixth Amendment to the United States Constitution, the burden is on the petitioner to show (1) that counsel's performance was deficient and (2) that the deficiency was prejudicial. Strickland v. Washington, 466 U.S. 668, 687 (1984); see Lockhart v. Fretwell, 506 U.S. 364, 368-72 (1993).

Deficient performance requires a showing that "counsel's representation fell below an objective standard of reasonableness," despite the fact that reviewing courts "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Strickland, 466 U.S. at 688-89. In reviewing counsel's conduct, a "fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." Id. "Thus, the fact that a particular strategy or tactic failed or even hurt the

-11-

defense does not, alone, support a claim of ineffective assistance." Cooper v. State, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992). Deference is made to trial strategy or tactical choices if they are informed ones based upon adequate preparation. Hellard v. State, 629 S.W.2d 4, 9 (Tenn. 1982).

Prejudice requires proof of "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. "Because a petitioner must establish both prongs of the test, a failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim." Goad v. State, 938 S.W.2d 363, 370 (Tenn. 1996). Because they relate to mixed questions of law and fact, we review the trial court's conclusions as to whether counsel's performance was deficient and whether that deficiency was prejudicial under a de novo standard with no presumption of correctness. Id. at 457.

At the post-conviction hearing, elbow counsel, a seasoned defense attorney, testified that although he did not recall the exact conversation he had with the Petitioner during the in-court recess, he was certain that he explained to the Petitioner his right to twelve jurors. Elbow counsel noted that he would never allow a defendant to proceed to trial without having explained this right, which he characterized as "just fundamental." In addition, trial counsel confirmed that elbow counsel conversed with the Petitioner during the brief in-court recess, and the hearing transcript reflects that elbow counsel asked the trial court for an opportunity to speak privately with the Petitioner. The post-conviction court credited elbow counsel's testimony. Elbow counsel and trial counsel were not deficient in this regard because at least one member of the defense team informed the Petitioner of his right to twelve jurors.

Likewise, the Petitioner has not established prejudice. At the post-conviction hearing, the Petitioner indicated that he had prior experience with the criminal justice system and that he was generally aware that he was entitled to twelve jurors. Moreover, elbow counsel testified that he advised the Petitioner to proceed with eleven jurors because he felt the remaining jurors were favorable to the Petitioner. We note that this tactic was somewhat successful, resulting in the Petitioner's conviction for the lesser-included offense of facilitation of attempted second degree murder. The Petitioner has failed to establish that he was prejudiced, and he is not entitled to relief on this basis.

## II.

The Petitioner contends that because the trial court and his counsel failed to advise him of his constitutional right to twelve jurors, he was permitted to make an unknowing waiver. The State responds that the Petitioner has waived this issue for failure to raise it in the trial court or on direct appeal.

-12-

The right to trial by jury is a cornerstone of the American criminal justice system. State v. Ellis, 953 S.W.2d 216, 220 (Tenn. Crim. App. 1997) (citing Duncan v. Louisiana, 391 U.S. 145, 149 (1968)).  As relevant here, the right to a jury trial includes having "the facts involved tried and determined by twelve jurors."  State v. Bobo, 814 S.W.2d 353, 356 (Tenn. 1991).  Under Tennessee law, a defendant may waive this right so long as the waiver is in writing and approved by the trial court and district attorney.  Tenn. R. Crim. P. 23. However, "noncompliance with Rule 23's requirement of a written waiver does not ipso facto render a waiver invalid" so long as it is clear from the record that the waiver was "a voluntary relinquishment of the rights to be tried by a common law jury."  Ellis, 953 S.W.2d at 221 (quoting Bobo, 814 S.W.2d at 359) (quotation marks omitted).  This court discussed in Ellis that for a waiver to be effective absent a written waiver, the defendant "must first be advised by the court of his right to a jury trial, and then, must personally waive the right in open court for the record."  953 S.W.2d at 221-22.

Regardless, we agree with the State that this issue has been waived for failure to raise it on direct appeal.  Our post-conviction procedure statutes dictate that "[a] ground for relief is waived if a petitioner personally or through an attorney failed to present it for determination in any proceeding before a court of competent jurisdiction in which the ground could have been presented," except in two circumstances not relevant to this case. Tenn. Code Ann. § 40-30-106(g); see Mobley v. State, 397 S.W.3d 70, 104 (Tenn. 2013) (holding that a due process claim raised for the first time in a post-conviction petition was waived for failure to raise it in the trial court or on direct appeal); Grindstaff v. State, 297 S.W.3d 208, 219 (Tenn. 2009) (acknowledging the statutory directive for waiver). "Furthermore, the plain error rule, which would otherwise permit an appellate court to address the issue sua sponte, may not be applied to post-conviction proceedings to grounds that would otherwise be deemed either waived or previously determined." Grindstaff, 297 S.W.3d at 219 (citing State v. West, 19 S.W.3d 735, 756-57 (Tenn. 2000)).  In addition, generally, the right to effective assistance of counsel does not extend to post-conviction proceedings.  Id. (citing House v. State, 911 S.W.2d 705, 712 (Tenn. 1995) (additional citation omitted).  We are therefore constrained to waive our consideration of this issue.

CONCLUSION

Based on the foregoing and the record as a whole, the judgment of the post-conviction court is affirmed.

_____
D. KELLY THOMAS, JR., JUDGE

-13-